UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------- X

MR. AND MRS. A., on behalf of D.A.,          :

          Plaintiffs,          :   09 Civ. 5097 (PGG)

                    :   ECF Case

      - against -          :

NEW YORK CITY DEPARTMENT OF          :
EDUCATION and JOEL KLEIN, in his official          :
capacity as Chancellor of the New York City          :
School District,          :

          Defendant.          :

------------------------------------------------------- X

<br>

## MEMORANDUM OF LAW
## OF AMICI CURIAE IN SUPPORT OF
## PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

<br>

| | |
|---|---|
| Michael D. Hampden (MH 2359) | Rebecca C. Shore (RS 5158) |
| Sandra Weinglass (SW 8646) | Matthew Lenaghan (ML 8603) |
| Partnership for Children's Rights | Kimberly Madden (KM 3570) |
| 271 Madison Avenue, 17th Floor | Miranda B. Johnson (MJ 9281) |
| New York, NY 10016 | Elizabeth Callahan* |
| Tel: (212) 683-7999 | Advocates for Children of New York, Inc. |
| Erin McCormack-Herbert, | 151 West 30th Street, 5th Floor |
|     On the Memorandum of Law | New York, NY 10001 |
| | Tel: (212) 947-9779 |
| | * not admitted |

**Additional amicus organizations listed on the following page**

Yisroel Schulman (YS 3107)
Laura Davis  (LD 8226)
New York Legal Assistance Group
450 West 33rd Street, 11th Floor
New York, NY 10001
Tel: (212) 613-5040

Nelson Mar (NM 5692)
Oroma H. Mpi (OM 9042)
Legal Services NYC-Bronx
579 Courtlandt Avenue
Bronx, NY 10451
Tel: (718) 928-3700

Tara Foster (TF 1372)
Queens Legal Services
42-15 Crescent Street, 9th Floor
Long Island City, NY 11101
Tel: (347) 592-2234

John C. Gray (JG-9872)
Nancy Bedard (NB-1980)
Robin Heszkel*
South Brooklyn Legal Services
105 Court Street
Brooklyn, NY 11201
Tel:  (718) 237 -5500
*not admitted

Steven Banks (SB 0987)
Cara Chambers (CC 0295)
The Legal Aid Society
199 Water Street
New York, NY 10038
Tel: (212) 577-3300

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................... ii

PRELIMINARY STATEMENT ........................................................................1

ARGUMENT .................................................................................................3

    I.     DIRECT TUITION PAYMENT IS AN AVAILABLE REMEDY
         UNDER THE IDEA ...............................................................................3

         A.    The IDEA Affords Courts and Hearing Officers Broad
               Equitable Authority to Award Appropriate Relief When a
               School District Fails to Provide a Disabled Child a FAPE. ...................... 3

         B.    Burlington Supports the Availability of a Direct Tuition
               Payment Remedy. .................................................................. 4

         C.    The IDEA's Tuition Reimbursement Provision,
               § 1412(a)(10)(C), Does Not Strip Courts and Hearing
               Officers of Their Equitable Authority to Award Appropriate
               Relief, Including Direct Tuition Payment to a Private
               School. .................................................................................. 6

               1.    Section 1412(a)(10)(C)(ii) Does Not Exhaustively
                        Describe the Tuition Remedies Available Under the
                        IDEA. .................................................................. 6

               2.    Section 1415 of the IDEA Provides Independent
                        Authority for Hearing Officers and Courts to Award
                        Appropriate Relief, Including Direct Tuition
                        Payment to an Appropriate Private School. ...................7

         D.    Post-Burlington Federal Case Law Supports the Availability
                of a Direct Tuition Payment Remedy. ......................................... 9

         E.    The SRO's Stated Reasons for Categorically Foreclosing a
               Direct Tuition Payment Remedy Are Without Merit. ............................. 11

    II.    DIRECT TUITION PAYMENT OF PRIVATE SCHOOL
         TUITION IS NECESSARY TO ENSURE THAT *ALL* DISABLED
         CHILDREN HAVE ACCESS TO A FAPE. ........................................ 16

CONCLUSION.................................................................................19

# TABLE OF AUTHORITIES

## Cases

Bd. of Educ. v. Rowley,
    458 U.S. 176 (1982)..................................................................1

Branch v. Smith,
    538 U.S. 254 (2003)..................................................................8

Burlington Sch. Comm. v. Dep't of Educ.,
    471 U.S. 359 (1985)..................................................................1, 3, 4, 5, 12,
    15, 17

Burr v. Ambach,
    863 F.2d 1071 (2d Cir. 1988).....................................................17

Cerra v. Pawling Cent. Sch. Dist.,
    427 F.3d 186 (2d Cir. 2005)......................................................14

Connors v. Mills,
    34 F. Supp. 2d 795 (N.D.N.Y. 1998).........................................9, 10, 18

Diaz-Fonseca v. Puerto Rico,
    451 F.3d 13 (1st Cir. 2006).......................................................13

Draper v. Atlanta Indep. Sch. Sys.,
    518 F.3d 1275 (11th Cir. 2008) ................................................10, 11, 18

Florence County Sch. Dist. Four v. Carter,
    510 U.S. 7 (1993)....................................................................1, 3, 4, 16

Forest Grove Sch. Dist. v. T.A.,
    129 S.Ct. 2484 (2009)..............................................................6, 7, 8, 16

Gagliardo v. Arlington Cent. Sch. Dist.,
    489 F.3d 105 (2d Cir. 2007)......................................................14

Mackey ex rel. Thomas M. v. Bd. of Educ.,
    386 F.3d 158 (2d Cir. 2004)......................................................1

Muller v. Comm. on Special Educ.,
    145 F.3d 95 (2d Cir. 1998)........................................................14

Murphy v. Arlington Cent. Sch. Dist.,
    86 F. Supp. 2d 354 (S.D.N.Y. 2000)...............................................................12

Nat'l Ass'n of Home Builders v. Defenders of Wildlife,
    127 S. Ct. 2518 (2007)..................................................................................8

Reid v. District of Columbia,
    401 F.3d 516 (D.C. Cir. 2005) .....................................................................18

Sabatini v. Corning-Painted Post Area Sch. Dist.,
    78 F. Supp. 2d 138 (W.D.N.Y. 1999) ...........................................................10

Schaffer v. Weast,
    546 U.S. 49 (2005).......................................................................................1

Susquenita Sch. Dist. v. Raelee S.,
    96 F.3d 78 (3d Cir. 1996).............................................................................18

S.W. v. New York City Dep't of Educ.,
    No. 07 Civ. 9812 (JGK), 2009 WL 857549 (S.D.N.Y. Mar. 30, 2009).........10, 18

Winkelman v. Parma City Sch. Dist.,
    127 S. Ct. 1994 (2007).......................................................................1, 16, 19


**Statutes**

20 U.S.C. § 1400(c)(6)...............................................................................16

20 U.S.C. § 1400(c)(7)...............................................................................16

20 U.S.C. § 1400(d)(1)(A) ......................................................................1, 16

20 U.S.C. § 1401(9) ....................................................................................1

20 U.S.C. § 1401(29) ...................................................................................1

20 U.S.C. § 1412(a)(10)(C)(ii) ......................................................................6

20 U.S.C. § 1415(i)(2)(C)(iii) ........................................................................3

20 U.S.C. § 1431(a)(5)...............................................................................17

20 U.S.C. § 1437(b)(7) ..............................................................................17

20 U.S.C. § 1453(b)(8) ............................................................................17

20 U.S.C. § 1471(a)(2)(iii).......................................................................17

20 U.S.C. § 1481(d)(3)(C) ........................................................................17

IDEA Amendments of 1997, Pub. L. No. 105-17, 111 Stat. 37, 63 (1997)...............6

### State Review Officer Decisions

Appeal No. 02-079 .....................................................................................3

Appeal No. 04-037 .....................................................................................3

Appeal No. 04-092 .....................................................................................3

Appeal No. 05-025 .....................................................................................3

Appeal No. 06-035 .....................................................................................3

Appeal No. 06-106 .....................................................................................3

Appeal No. 07-070 ...................................................................................15

Appeal No. 09-083 ...................................................................................15

Appeal No. 09-085 ...................................................................................15

## PRELIMINARY STATEMENT

The amicus organizations represent low-income children with disabilities and their parents in defending their right to a free appropriate public education (FAPE) under the Individuals with Disabilities Education Improvement Act of 2004 (IDEA). A detailed description of the interest of each amicus organization is set forth in the letter sent to the Court requesting leave to appear in this action. We submit this memorandum of law and supporting declaration and affidavits in support of the plaintiffs' motion for summary judgment.

The IDEA is designed to ensure that all children with disabilities are provided with a FAPE. See 20 U.S.C. § 1400(D)(1)(A); Schaffer v. Weast, 546 U.S. 49, 51 (2005); Mackey ex rel. Thomas M. v. Bd. of Educ., 386 F.3d 158, 159–60 (2d Cir. 2004). In order to satisfy the requirements of the IDEA, a school district must provide each disabled child with "special education and related services," 20 U.S.C. § 1401(9), that are "reasonably calculated to enable the child to receive educational benefits," Bd. of Educ. v. Rowley, 458 U.S. 176, 207 (1982). FAPE must be provided at "no cost to parents." 20 U.S.C. § 1401(29); Winkelman v. Parma City Sch. Dist., 127 S. Ct. 1994, 2001 (2007).

School districts, however, sometimes fail to offer a disabled child a FAPE. The United States Supreme Court has held that when this occurs, the parent may choose to enroll the child in an appropriate private school, pay the tuition, and seek reimbursement from the school district. Burlington Sch. Comm. v. Dep't of Educ., 471 U.S. 359, 360–70, 374 (1985); Florence County Sch. Dist. Four v. Carter, 510 U.S. 7, 13 (1993). The three requirements for a tuition award are: (1) the program offered by the school district was inadequate or inappropriate; (2) the private school selected by the parent is appropriate; and (3) equitable considerations support the parent's claim. Carter, 510 U.S. at 12; Burlington, 471 U.S. at 370, 374.

For wealthy parents, the reimbursement remedy can be an effective means of enforcing the IDEA's FAPE guarantee. However, many parents—like those the amicus organizations represent—do not have the financial means to advance the cost of their child's attendance at a private school. Direct tuition payment to the private school is the only meaningful remedy for these parents; reimbursement would be an illusory remedy for the denial of FAPE.

Some Impartial Hearing Officers (IHOs) in New York City have found direct tuition payment to be an appropriate and permissible remedy under the IDEA and have awarded this remedy in cases where the DOE denied a disabled student a FAPE and the parent lacked the financial means to pay in advance and seek reimbursement. See Declaration of Matthew Lenaghan, dated December 3, 2009; Affidavit of Vilma Carey, dated November 5, 2009; Affidavit of Maria Bassi, dated October 30, 2009. Had these IHOs refused to award direct tuition payment, the students would have been forced to remain in inappropriate placements or, in some cases, would have had no placement at all. See id.

The plaintiffs in this case, Mr. and Mrs. A., sought funding of their child D.A.'s tuition at the Rebecca School, a special education private school, through IDEA due process proceedings. The IHO found in favor of the parents and ordered the DOE to pay the tuition directly to the Rebecca School. The State Review Officer (SRO), in Appeal No. 09-001, affirmed the IHO's ruling in favor of the parents on the merits of their tuition claim, finding that the New York City Department of Education (DOE) failed to offer D.A. a FAPE, that the Rebecca School was an appropriate placement for D.A., and that Mr. and Mrs. A. cooperated with the DOE. Nonetheless, the SRO refused to order the DOE to pay D.A.'s tuition, concluding that because Mr. and Mrs. A. had not first paid the tuition themselves, they had no right under the IDEA to obtain tuition funding.

The SRO's ruling in Appeal No. 09-001 jeopardizes the existence of the vital direct payment remedy and treats low-income parents as second-class citizens under the IDEA.[1]  The SRO's reasoning achieves the incongruous and inequitable result that students from families with resources are able to receive a FAPE, but lower income students must remain in inappropriate school placements because their families cannot afford to pay tuition and seek reimbursement from the school district.  The SRO's decision must be reversed to ensure that all disabled children have equal access to the private school tuition remedy.

## ARGUMENT

### POINT I

### DIRECT TUITION PAYMENT IS AN AVAILABLE REMEDY UNDER THE IDEA.

**A.    The IDEA Affords Courts and Hearing Officers Broad Equitable Authority to Award Appropriate Relief When a School District Fails to Provide a Disabled Child a FAPE.**

In order to protect the right of a disabled child to a FAPE, the IDEA grants courts broad discretion to "grant such relief as the court determines is appropriate."    20 U.S.C. § 1415(i)(2)(C)(iii).  In Burlington School Committee v. Department of Education, 471 U.S. 359 (1985), the Supreme Court interpreted this statutory provision to "confer[] broad discretion on the court" to grant relief that is "'appropriate' in light of the purpose of the Act," id. at 369, including an equitable award of tuition reimbursement to parents, id. at 370, 374.

The Court affirmed this expansive view of the Act's remedial purpose in Florence County School District Four v. Carter, 510 U.S. 7 (1993), holding that parents may be awarded

---

[1] The SRO has stated in other decisions that the IDEA authorizes only tuition reimbursement to a parent who previously made an out-of-pocket payment. See, e.g., SRO Appeal Nos. 06-106, 06-035, 05-025, 04-092, 04-037, 02-079, available at http://www.sro.nysed.gov/decisionindex/default.html.  This, however, is the first decision in which the SRO's refusal to approve direct payment has in itself determined the outcome of the case.

3

tuition reimbursement even when the private school in which they have placed their child is not state-approved and does not meet state education standards. Id. at 13–14. The Court reasoned: "[T]o read the § 1401(a)(18) [FAPE] requirements as applying to parental placements would effectively eliminate the right of unilateral withdrawal recognized in *Burlington*. Moreover, IDEA was intended to ensure that children with disabilities receive an education that is both appropriate and free. To read the provisions of § 1410(a)(18) to bar reimbursement in the circumstances of this case would defeat the statutory purpose." Id. (citation omitted).

As the Carter Court explained: "[O]nce a court holds that the public placement violated IDEA, it is authorized to 'grant such relief as the court determines is appropriate.'" Id. at 15–16. "'[E]quitable considerations are relevant in fashioning relief,' and the court enjoys 'broad discretion' in so doing." Id. at 16 (quoting Burlington, 471 U.S. at 369, 374).

**B.    Burlington Supports the Availability of a Direct Tuition Payment Remedy.**

Although the specific remedy awarded to the parents in Burlington was tuition reimbursement, the Burlington Court analyzed the tuition payment remedy first and foremost in terms of prospective payment directly to the private school. The Court declared: "In a case where a court determines that a private placement desired by the parents was proper under the Act and that an IEP calling for placement in a public school was inappropriate, it seems clear beyond cavil that 'appropriate' relief would include a prospective injunction directing the school officials to develop and implement at public expense an IEP placing the child in a private school." Burlington, 471 U.S. at 370. The harder question before the Burlington Court was the availability of reimbursement—a remedy characterized by the Town as "damages." See id.

The Court concluded that, for many parents, prospective tuition payment would not be an adequate remedy for the denial of FAPE:

> If the administrative and judicial review under the Act could be completed in a matter of weeks, rather than years, it would be difficult to imagine a case in which such prospective injunctive relief would not be sufficient. As this case so vividly demonstrates, however, the review process is ponderous. A final judicial decision on the merits of an IEP will in most instances come a year or more after the school term covered by that IEP has passed. In the meantime, the parents who disagree with the proposed IEP are faced with a choice: go along with the IEP to the detriment of their child if it turns out to be inappropriate or pay for what they consider to be the appropriate placement. If they choose the latter course, which conscientious parents <u>who have adequate means</u> and who are reasonably confident of their assessment normally would, it would be an empty victory to have a court tell them several years later that they were right but that these expenditures could not in a proper case be reimbursed by the school officials. If that were the case, the child's right to a free appropriate public education, the parents' right to participate fully in developing a proper IEP, and all of the procedural safeguards would be less than complete.

<u>Id.</u> (emphasis added). Reasoning that Congress could not have intended to present the parents of disabled children with such an untenable choice, the Court held that "by empowering the court to grant 'appropriate' relief Congress meant to include retroactive reimbursement to parents as an available remedy in a proper case." <u>Id.</u> The Court further held that reimbursement does not constitute damages, as it "merely requires the Town to belatedly pay expenses that it should have paid all along and would have borne in the first instance had it developed a proper IEP." <u>Id.</u> at 370–71.

The remedy awarded in <u>Burlington</u> was tailored to the facts before the Court in that case—a case in which the parent had "adequate means" to pay the private school tuition in advance. However, the Court's reasoning applies with equal force to the availability of direct tuition payment. If that remedy were not available, the procedural rights of parents with limited financial means and their children's right to a FAPE would be, in the words of the <u>Burlington</u> Court, "less than complete." Moreover, direct tuition payment, like reimbursement, merely requires a school district to pay an expense it should have paid all along and would have paid in

the first instance if it had provided the child a FAPE. Indeed, the Burlington Court only addressed reimbursement in response to the practical need, in some cases, for parents to pay tuition prior to the resolution of a dispute; to the extent that such necessity does not arise, direct tuition payment is the original remedy envisioned by the Court.

**C.** **The IDEA's Tuition Reimbursement Provision, § 1412(a)(10)(C), Does Not Strip Courts and Hearing Officers of Their Equitable Authority to Award Appropriate Relief, Including Direct Tuition Payment to a Private School.**

In its 1997 and 2004 reauthorizations of the IDEA, Congress included a provision addressing the private school tuition reimbursement remedy approved in Burlington and Carter. This provision states: "If the parents of a child with a disability, who previously received special education and related services under the authority of a public agency, enroll the child in a private elementary school or secondary school without the consent of or referral by the public agency, a court or a hearing officer may require the agency to reimburse the parents for the cost of that enrollment if the court or hearing officer finds that the agency had not made a free appropriate public education available to the child in a timely manner prior to that enrollment." 20 U.S.C. § 1412(a)(10)(C)(ii); see also IDEA Amendments of 1997, Pub. L. No. 105-17, 111 Stat. 37, 63 (1997) (same).

**1. Section 1412(a)(10)(C)(ii) Does Not Exhaustively Describe the Tuition Remedies Available Under the IDEA.**

Congress's authorization of a tuition reimbursement remedy in § 1412(a)(10)(C)(ii) does not foreclose the availability of other tuition remedies for the denial of FAPE.

In its recent decision in Forest Grove School District v. T.A., 129 S.Ct. 2484, 2491–94 (2009), the Supreme Court rejected a comparably limiting interpretation of § 1412(a)(10)(C)(ii). The school district in Forest Grove argued that because this provision authorizes reimbursement to the parents of disabled children "who previously received special education and related

services under the authority of a public agency," it categorically bars a parent whose disabled child has not previously received special education and related services under the authority of a public agency from obtaining private school tuition reimbursement. Id. at 2492.

The Court rejected the school district's claim, holding that the 1997 IDEA amendments "impose no such categorical bar." Id. at 2488; see also id. at 2496 ("IDEA authorizes reimbursement for the cost of private special-education services when a school district fails to provide a FAPE and the private-school placement is appropriate, regardless of whether the child previously received special education or related services through the public school."). The Court conducted a detailed analysis of § 1412(a)(10)(C)(ii), concluding:

> Because that clause is phrased permissively, stating only that courts "may require" reimbursement in those circumstances, it does not foreclose reimbursement awards in other circumstances. Together with clauses (iii) and (iv), clause (ii) is best read as elaborating on the general rule that courts may order reimbursement when a school district fails to provide a FAPE by listing factors that may affect a reimbursement award in the common situation in which a school district has provided a child with some special-education services and the child's parents believe those services are inadequate. . . . The clauses of § 1412(a)(10)(C) are thus best read as elucidative rather than exhaustive.

Id. at 2493. The Court further concluded that the school district's proposed interpretation of § 1412(a)(10)(C)(ii) was "at odds with the general remedial purpose underlying IDEA and the 1997 Amendments" because "[w]ithout the remedy [the parent] seeks, a 'child's right to a free appropriate education . . . would be less than complete.'" Id. at 2494–95 (quoting Burlington, 471 U.S. at 370) (alteration in original).

2. **Section 1415 of the IDEA Provides Independent Authority for Hearing Officers and Courts to Award Appropriate Relief, Including Direct Tuition Payment to an Appropriate Private School.**

Section 1412(a)(10)(C)(ii) is not the only provision in the IDEA upon which parents may rely in seeking private school tuition payment. That statutory provision did not supplant the

preexisting equitable powers conferred on courts by § 1415(i)(2)(C)(iii) of the IDEA. To the contrary, the IDEA's express grant of equitable authority to fashion appropriate relief is independent of the tuition reimbursement remedy provided in § 1412(a)(10)(C)(ii).

In Forest Grove, the Supreme Court relied upon the broad equitable authority provided in § 1415 to reject the school district's proposed interpretation of § 1412(a)(10)(C)(ii). The school district in Forest Grove argued that § 1412(a)(10)(C)(ii) effectively repealed part of the broad equitable authority granted by § 1415(i)(2)(C)(iii), as interpreted in Burlington and Carter. Forest Grove, 129 S.Ct. at 2492. The Court rejected that argument, explaining: "In [Burlington and Carter], we construed § 1415(i)(2)(C)(iii) to authorize reimbursement when a school district fails to provide a FAPE and a child's private-school placement is appropriate, without regard to the child's prior receipt of services. It would take more than Congress' failure to comment on the category of cases in which a child has not previously received special-education services for us to conclude that the Amendments substantially superseded our decisions and in large part repealed § 1415(i)(2)(C)(iii)." Id. at 2494 (footnote omitted).

Here, as in Forest Grove, the canons of statutory interpretation disfavor a finding that Congress repealed part of the equitable authority described in § 1415(i)(2)(C)(iii) and Burlington implicitly, through the permissive language of § 1412(a)(10)(C)(ii). See Nat'l Ass'n of Home Builders v. Defenders of Wildlife, 127 S. Ct. 2518, 2532 (2007) (stating that "'repeals by implication are not favored' and will not be presumed unless the 'intention of the legislature to repeal [is] clear and manifest'" (quoting Watt v. Alaska, 451 U.S. 259, 267 (1981) (alteration in original)); Branch v. Smith, 538 U.S. 254, 273 (2003) ("An implied repeal will only be found where provisions in two statutes are in 'irreconcilable conflict,' or where the latter Act covers the

whole subject of the earlier one and 'is clearly intended as a substitute'" (quoting <u>Posadas v. Nat'l City Bank</u>, 296 U.S. 497, 503 (1936)).

Just as tuition payment is available, in appropriate circumstances, under § 1415(i)(2)(C)(iii) where a child has not previously received special education and related services under the authority of a public agency, it also must be available where the <u>Burlington</u> prerequisites have been satisfied and the parent cannot afford to pay the tuition in advance and await reimbursement.

**D.    <u>Post-Burlington Federal Case Law Supports the Availability of a Direct Tuition Payment Remedy</u>.**

In <u>Connors v. Mills</u>, 34 F. Supp. 2d 795 (N.D.N.Y. 1998), the U.S. District Court for the Northern District of New York concluded that prospective tuition payment, directly to the private school, is available to parents who have satisfied the <u>Burlington</u> prerequisites and demonstrated that they cannot afford to pay the tuition at their child's private school placement in advance. <u>Id.</u> at 805–06 ("Once the <u>Burlington</u> prerequisites relative to a non-approved private school are met, and a parent shows that his or her financial circumstances eliminate the opportunity for unilateral placement in the non-approved school, the public school must pay the cost of private placement immediately." (footnote omitted)).

While the <u>Connors</u> court found that the parents in the case before it were not entitled to prospective tuition payment, the case is strong persuasive authority for the availability of a direct payment remedy. Picking up where the <u>Burlington</u> decision left off, the <u>Connors</u> court reasoned that "[i]n a situation where a parent does *not* have the adequate means to finance unilateral private placement and is told by a court years later that they were right, the victory would not only be empty but meaningless." <u>Id.</u> at 804 (emphasis in original). Refusing to find that the IDEA provided more relief to parents of means than to those with low income, the court

concluded that "[i]t simply cannot be the case that an act designed to grant 'all' disabled children access to needed services would undermine that very goal by making such access dependent upon a family's financial situation." Id.

More recently, this Court opined that "[i]n a case where the equities favor such an award, there may be good reasons why direct tuition payment should be a remedy available to a needy parent, on either a prospective or a retrospective basis." S.W. v. New York City Dep't of Educ., No. 07 Civ. 9812 (JGK), 2009 WL 857549, at *10 (S.D.N.Y. Mar. 30, 2009). Although the Court did not find that the equities favored the parent's tuition claim in the case before it, id. at **10, 14, the S.W. decision presents further persuasive authority for the availability of a direct tuition payment remedy.

Moreover, as noted in S.W., two courts have "ordered school districts to make prospective tuition payments directly to a private school." Id. at *10 (citing Draper v. Atlanta Indep. Sch. Sys., 518 F.3d 1275, 1284–86 (11th Cir. 2008); Sabatini v. Corning-Painted Post Area Sch. Dist., 78 F. Supp. 2d 138 (W.D.N.Y. 1999)). In Sabatini, the U.S. District Court for the Western District of New York issued a preliminary injunction requiring a school district to pay for a student's placement in a private school and instructed the district to "make whatever financial arrangements are necessary" to allow the student to attend that school. 78 F. Supp. 2d at 147.

In Draper, the Eleventh Circuit Court of Appeals upheld a district court decision awarding a disabled child prospective placement in a private school as compensatory education, 518 F.3d at 1285, 1290, concluding that a "prospective injunction that requires a placement in a private school is appropriate 'beyond cavil' when an educational program 'calling for placement

in a public school [is] inappropriate,'" id. at 1285 (quoting Burlington, 471 U.S. at 370) (alteration in original)).  The court explained:

> The School System argues that Draper's award is different from an award of reimbursement, but reading "appropriate" as requiring prospective placement in a public school, as the School System argues, would create an anomaly in the law. . . . If the district court could not prospectively award Draper a placement in a private school, Draper would be worse off with an award of prospective education than he would be with a retroactive award of reimbursement for the same violations of the Act. . . . The argument of the School System would provide those wealthier parents greater benefits under the Act than poorer parents.

Id. at 1286.

Thus, post-Burlington federal case law strongly supports the availability of a direct tuition payment remedy in order to protect a disabled student's right to a FAPE.

**E.      The SRO's Stated Reasons for Categorically Foreclosing a Direct Tuition Payment Remedy Are Without Merit.**

In the decision below, the SRO offered several explanations for the notion that direct tuition payment is categorically unavailable to the parents of a disabled child who have satisfied all three Burlington prongs and cannot afford to pay the private school tuition in advance and await reimbursement.[2]  Each of the SRO's rationales is without legal merit.

**The SRO's first rationale** is that, under Burlington, "parents who choose to unilaterally place their child at a private school without consent or referral by the school district do so at their own financial risk."  SRO Decision at 7 (citing Burlington, 471 U.S. at 373–74).

The SRO fundamentally misreads Burlington.  The "financial risk" alluded to by the Burlington Court is the risk assumed by parents of losing their tuition claim on the merits, i.e. by

---

[2]  The SRO has acknowledged that he is constrained by federal case law to recognize the availability of direct payment in two other IDEA contexts—pendency (maintaining the student's last agreed upon placement during due process proceedings) and compensatory education (remedying a prior denial of FAPE).  See SRO Decision at 8 n.3.

failing to satisfy the three-prong test regarding FAPE, appropriateness of the private school, and equitable considerations.    See Burlington, 471 U.S. at 373–74 ("[P]arents who unilaterally change their child's placement during the pendency of review proceedings, without the consent of state or local school officials, do so at their own financial risk.    If the courts ultimately determine that the IEP proposed by the school officials was appropriate, the parents would be barred from obtaining reimbursement for any interim period in which their child's placement violated § 1415(e)(3) [the pendency provision in the predecessor statute to the IDEA]."); see also Murphy v. Arlington Cent. Sch. Dist., 86 F. Supp. 2d 354, 367 n.9 (S.D.N.Y. 2000), aff'd, 297 F.3d 195 (2d Cir. 2002) ("[T]he [Burlington] Court required that parents prevail on the merits in order to be entitled to reimbursement for the period during which they were in violation of § 1415(j) [the IDEA's current pendency provision.]").

The "financial risk" language of Burlington does not, as the SRO suggests, create a requirement that parents must suffer an "out-of-pocket" loss for the private school placement. SRO Decision at 8.    The SRO misconstrues the plain meaning of the Court's words by equating the concept of "financial risk" with a requirement that parents incur a reimbursable debt by first paying the tuition.

**The SRO's second rationale** is that Burlington approved only "retroactive reimbursement."    SRO Decision at 7.    Again, the SRO misreads the Court's opinion.    As discussed above, the Burlington Court analyzed the tuition payment remedy first and foremost in terms of direct payment to a private school, characterizing such relief as a "prospective injunction."    See Point I.B, supra.    The Court's holding that reimbursement is an available remedy for parents who have the means to pay tuition in advance in no way implies that direct

payment is not an available remedy for parents of lesser financial means who are able to find an appropriate placement.

**The SRO's third rationale** is that parents may recover "only actual, not anticipated, expenses for private school tuition and related expenses." SRO Decision at 7 (citing Diaz-Fonseca v. Puerto Rico, 451 F.3d 13, 32, 40 (1st Cir. 2006)). The SRO misunderstands the Diaz-Fonseca case and the court's holding. Diaz-Fonseca was not a case in which the parent sought direct tuition payment to a private school where she had placed her child. Rather, the parent sought payments *to herself*—reimbursement for actual payments she had made (tuition as well as other expenses), and damages for future educational expenses she anticipated having to incur until the student reached maximum school age. Id. at 29–32.

The Diaz-Fonseca court, in ruling that the parent "is not entitled to be reimbursed for educational expenses that she has yet to pay," and that "[s]he is entitled to no more than the sum of the educational expenses *she has already paid*," id. at 32 (emphasis in original), was merely stating the self-evident point that a plaintiff seeking damages for her own financial loss must have actually incurred that loss, and may not ask a court to compensate her for expenses she expects to pay in the future. The court's observation that "reimbursement can only be retrospective," id. at 32 n.23, has nothing to do with the issue presented here—whether a school district may be required to make direct tuition payment to a private school in order to remedy the denial of FAPE to a disabled student.

None of the other cases cited by the SRO lends support to the notion that direct payment to a private school is unavailable to parents who cannot afford to make tuition payments themselves. Every one of these cases was an action brought by parents who had previously made tuition payments, and, as in Burlington, sought reimbursement to themselves rather than

13

direct payment to the school. See Carter, 510 U.S. 7 at 7 ("Shannon's parents filed this suit . . . seeking reimbursement for tuition and other costs incurred at Trident."); Gagliardo v. Arlington Cent. Sch. Dist., 489 F.3d 105, 106 (2d Cir. 2007) ("[The district court] ordered the School District to reimburse the parents for the tuition expenses they incurred in sending S.G. to the private school they chose."); Cerra v. Pawling Cent. Sch. Dist., 427 F.3d 186, 192 (2d Cir. 2005) ("The Cerras sued under the [IDEA] seeking reimbursement for their learning disabled daughter's private school tuition."); Muller v. Comm. on Special Educ., 145 F.3d 95, 106 (2d Cir. 1998) ("Accordingly, we hold that the district court properly ordered the District to compensate the Mullers for their out-of-pocket expenses in enrolling Treena in the EAC Program."). None of these cases involved the issue of direct payment to the school, and none suggested that reimbursement is the *only* tuition remedy available under the Act.

The SRO's fourth rationale is that "the IDEA does not expressly provide for payment of tuition costs in the circumstance herein." SRO Decision at 8. This observation carries no weight, given the broad equitable authority accorded to federal courts by the IDEA to carry out its mandates, and the Supreme Court's consistent interpretation of the Act to authorize tuition remedies not specifically provided for therein. See Point I.A–C, supra.

The SRO's final rationale for concluding that direct payment is *not* available is that the IDEA *does* expressly provide for reimbursement of private school tuition payments. SRO Decision at 8 (citing 20 U.S.C. § 1412(a)(10)(C)(ii)). As discussed above, the Supreme Court rejected a parallel argument regarding § 1412(a)(10)(C)(ii) in Forest Grove. See Point I.C–D, supra. The reimbursement remedy authorized in that provision does not supplant the remedial

14

power of courts and administrative officers to approve tuition payments other than reimbursement under § 1415(i)(2)(C)(iii) of the Act.[3]

\* \* \*

In Burlington, the Supreme Court instructed that the IDEA "was intended to give handicapped children both an appropriate education and a free one; it should not be interpreted to defeat one or the other of those objectives." 471 U.S. at 372. The SRO's decision in Appeal No. 09-001 defeats both of these statutory objectives and must be rejected.

If the SRO's reasoning were accepted, a parent who has satisfied all of the Burlington prerequisites—a parent whose disabled child has been denied a FAPE, who has placed the child in a private school that meets the child's special education needs, and who has communicated and cooperated with the school district in all respects—*must* be denied payment for the cost of the child's private school placement simply because the parent lacks the financial means to pay the tuition in advance and await reimbursement. In such a case, the school district that abdicated its duty to provide a FAPE would be relieved of financial responsibility for the cost of an appropriate private school placement, and the child would receive neither an appropriate public education nor a free private one.

---

[3] The SRO has recognized the preeminence of § 1415 in other contexts, yet refuses to do so in cases involving direct tuition payment.  Compare SRO Appeal No. 09-001 with SRO Appeal No. 09-085, at 6 ("[I]n view of the statutory text and the case law . . ., I cannot conclude that the parent is categorically barred by § 1412(a)(10)(C)(ii) from seeking relief in the form of tuition reimbursement at a for-profit school." (citation omitted) (relying on § 1415(i)(2)(C)(iii) and Forest Grove)); SRO Appeal No. 09-083, at 5 (same); SRO Appeal No. 07-070 (holding that relief available to parents under IDEA includes reimbursement for cost of student's unilateral enrollment in out-of-district *public* school); id. at 5 ("In the absence of controlling legal authority that limits tuition reimbursement claims to unilateral placements in private schools, I conclude that, in appropriate circumstances, the IDEA permits an award of tuition reimbursement for the unilateral placement of a child in a public school . . . ." (citing, inter alia, § 1415(i)(2)(C)(iii)).

15

**POINT II**

**DIRECT PAYMENT OF PRIVATE SCHOOL TUITION IS NECESSARY TO ENSURE THAT *ALL* DISABLED CHILDREN HAVE ACCESS TO A FAPE.**

In enacting the IDEA, Congress was committed to providing *every* disabled child equal access to an appropriate education. See 20 U.S.C. § 1400(d)(1)(A) (providing that purpose of Act is to ensure that "all children with disabilities have available to them a free appropriate public education" (emphasis added)); § 1400(c)(6), (7) ("[I]t is in the national interest that the Federal Government have a supporting role in assisting State and local efforts to educate children with disabilities in order to improve results for such children and to ensure equal protection of the law . . . [A] more equitable allocation of resources is essential for the Federal Government to meet its responsibility to provide an equal educational opportunity for all individuals." (emphasis added)).

FAPE, as the Act's single most important substantive principle, must prevail over less fundamental considerations. In each of the four leading Supreme Court cases adjudicating a parent's right to private school tuition funding under the IDEA, the Court was asked by a school district to limit the tuition remedy based on some assertedly competing provision of the Act. In each case, the Court rejected such arguments because they posed a conflict with the student's fundamental right to a FAPE. See Forest Grove, 129 S.Ct. at 2494 (FAPE trumps statutory construction precluding tuition award if student has not previously received special education from school district); Winkelman v. Parma City School District, 550 U.S. 516, 531 (2007) (FAPE trumps IDEA construction prohibiting parents from proceeding in district court without legal representation); Carter, 510 U.S. at 14 (FAPE trumps state private school approval

process); Burlington, 471 U.S. at 369–70 (FAPE trumps statutory construction prohibiting reimbursement).

The IDEA's FAPE guarantee was not meant to be rationed out to students in proportion to their parents' financial means; FAPE is guaranteed to all disabled students, including the poor. See 20 U.S.C. § 1431(a)(5) ("Congress finds that there is an urgent and substantial need . . . to enhance the capacity of State and local agencies and service providers to identify, evaluate, and meet the needs of all children, particularly minority, low-income, inner city, and rural children, and infants and toddlers in foster care.").

Throughout the IDEA, the interests of low-income families are fostered and protected. See, e.g., § 1481(d)(3)(C) (providing that in awarding grants, contracts, or cooperative agreements, the Secretary may give priority to "projects that address the needs of children from low income families"); § 1453(b)(8) (providing that states must "describe the steps the State educational agency will take to ensure that poor and minority children are not taught at higher rates by teachers who are not highly qualified"); § 1437(b)(7) (providing that any State that applies for a grant under § 1433 "shall provide satisfactory assurance that policies and procedures have been adopted to ensure meaningful involvement of underserved groups, including . . . low-income . . . families"); § 1471(a)(2)(iii) (providing that, in order to support parent training, grants may be awarded to parent organizations "the parent and professional members of which are broadly representative of the population to be served, including low-income parents").

Consistent with this statutory purpose, federal courts have rejected interpretations of the IDEA that would discriminate against financially disadvantaged families of students with disabilities. See Burr v. Ambach, 863 F.2d 1071, 1078 (2d Cir. 1988), vacated by 492 U.S. 902

17

(1989), reaff'd on remand, 888 F.2d 258 (2d Cir. 1989), cert. denied, 494 U.S. 1005 (1990) ("[U]nder the [predecessor statute to the IDEA] a parent can enroll a child in a private placement and then recover the tuition paid by the parent during the proceedings against the school board, if the proceedings ultimately establish that the parent's placement was appropriate.    [Citing Burlington.]  If that is so, then a child should not be wholly deprived of education because his parents could not afford to pay for an appropriate education at a private school while waiting for the state or local agency to litigate the issue of a proper placement."); see also Draper v. Atlanta Indep. Sch. Sys., 518 F.3d 1275, 1286 (11th Cir. 2008) ("The Act does not relegate families who lack the resources to place their children unilaterally in private schools to shouldering the burden of proving that the public school cannot adequately educate their child before those parents can obtain a placement in a private school."); Reid v. District of Columbia, 401 F.3d 516, 522–23 (D.C. Cir. 2005) ("Given the availability of reimbursement for compensatory instruction, were it impossible to obtain an award of the instruction itself, children's access to appropriate education could depend on their parents' capacity to front its costs – a result manifestly incompatible with IDEA's purpose of 'ensur[ing] that *all* children with disabilities have available to them a free appropriate public education.'" (emphasis in original) (quoting 20 U.S.C. § 1400(d)(1)(A)); Susquenita Sch. Dist. v. Raelee S., 96 F.3d 78, 87 (3d Cir. 1996) ("The purpose of the Act, which is to ensure that every child receive a 'free appropriate education' is not advanced by requiring parents, who have succeeded in obtaining a ruling that a proposed IEP is inadequate, to front the funds for continued private education."); S.W. v. New York City Dep't of Educ., No. 07 Civ. 9812 (JGK), 2009 WL 857549, at *10 (S.D.N.Y. Mar 30, 2009); Connors v. Mills, 34 F. Supp. 2d 795, 804 (N.D.N.Y. 1998).

In <u>Winkelman</u>, the Supreme Court held that IDEA rights must be construed broadly so as to avoid leaving some disabled children who are denied a FAPE without a remedy.  550 U.S. at 533.    In doing so, the Court avoided the "potential for injustice" that would follow from a construction of the law that, while assuring every disabled child an appropriate education as a substantive right, denies some children an effective remedy when the school district falls short of the Act's guarantees.  <u>Id.</u> ("[W]e find nothing in the statute to indicate that when Congress required States to provide adequate instruction to a child 'at no cost to parents,' it intended that only some parents would be able to enforce that mandate.").

Denying low-income parents direct tuition payment is wholly inconsistent with the IDEA's primary purpose of ensuring a FAPE to every disabled student.  It should not be presumed that in drafting this remedial statute Congress intended to leave parents like Mr. and Mrs. A. without a remedy.

## CONCLUSION

For the reasons set forth above, the amicus organizations respectfully request the Court to declare that the SRO's prohibition against direct tuition payment is fundamentally wrong as a matter of law.  We urge the Court to declare that an administrative officer or court is fully authorized by the IDEA to order a school district to make direct tuition payment to a private school in order to effectuate a disabled student's right to a FAPE.

19

Dated: New York, New York
      December 4, 2009

Respectfully submitted,

_____
Michael D. Hampden (MH 2359)
Sandra Weinglass (SW 8646)
Partnership for Children's Rights
271 Madison Avenue, 17th Floor
New York, NY 10016
Tel: (212) 683-7999
Erin McCormack-Herbert,
      On the Memorandum of Law


/s/_____
Yisroel Schulman (YS 3107)
Laura Davis  (LD 8226)
New York Legal Assistance Group
450 West 33rd Street, 11th Floor
New York, NY 10001
Tel: (212) 613-5040


/s/_____
Tara Foster (TF 1372)
Queens Legal Services
42-15 Crescent Street, 9th Floor
Long Island City, NY 11101
Tel: (347) 592-2234



/s/_____
Steven Banks (SB 0987)
Cara Chambers (CC 0295)
The Legal Aid Society
199 Water Street
New York, NY 10038
Tel: (212) 577-3300


_____
Rebecca C. Shore (RS 5158)
Matthew Lenaghan (ML 8603)
Kimberly Madden (KM 3570)
Miranda B. Johnson (MJ 9281)
Elizabeth Callahan*
Advocates for Children of New York, Inc.
151 West 30th Street, 5th Floor
New York, NY 10001
Tel: (212) 947-9779
* not admitted


/s/_____
Nelson Mar (NM 5692)
Oroma H. Mpi (OM 9042)
Legal Services NYC-Bronx
579 Courtlandt Avenue
Bronx, NY 10451
Tel: (718) 928-3700


/s/_____
John C. Gray (JG-9872)
Nancy Bedard (NB-1980)
Robin Heszkel*
South Brooklyn Legal Services
105 Court Street
Brooklyn, NY 11201
Tel:  (718) 237-5500
*not admitted