UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
_____

| | | |
|---|---|---|
| Mr. and Mrs. A., on behalf of D.A. | : | 09 CV 5097 (PGG) |
| | : | |
| Plaintiffs, | : | |
| v. | : | |
| | : | |
| New York City Department of Education, and | : | |
| JOEL KLEIN, in his official capacity as Chancellor | : | |
| of the New York City School District, | : | |
| | : | |
| Defendants. | : | |
| | : | |

_____

### MR. AND MRS. A'S MEMORANDUM OF LAW IN
### SUPPORT OF MOTION FOR SUMMARY JUDGMENT


**LAW OFFICES OF MICHELE KULE-KORGOOD**
*Attorneys for Plaintiffs Mr. and Mrs. A., on behalf of D.A.*
118-35 QUEENS BOULEVARD - 17TH FLOOR
FOREST HILLS, NEW YORK  11375

_____

MAIN NO.:  (718) 261-0181
FACSIMILE NO.:  (718) 268-2633

# TABLE OF CONTENTS

**Page**

INTRODUCTION .................................................................................................................. 1

STATEMENT OF FACTS ..................................................................................................... 3

I.   It Is Uncontested That Defendants Fail to Offer D.A., A Student  Classified As
     Autistic, A FAPE At the Start of the 2007-2008 School Year .................................... 3

II.  It Is Uncontested That D.A.'s Parents Unilaterally Place D.AIn the Rebecca
     School, An Appropriate Placement to Meet D.A.'s unique Educational Needs ........... 4

III. It is Uncontested That An IHO and The SRO Agree That the Defendants Failed
     To Provide A Free Appropriate Public Education, That the Rebecca School Is
     Appropriate,  And That The Parents' Cooperated With Defendants ........................... 5

ARGUMENT .......................................................................................................................... 6

I.   Standard of Judicial Review ........................................................................................ 6

II.  The Court Should Grant Summary Judgment in Favor of The Parents Because the
     IDEA Authorizes The Court To Order Payment Of Tuition Costs Where, As
     Here, Defendants Have Failed to Provide a FAPE, When A Parent Has
     Unilaterally Placed A Child With Disabilities In An Appropriate Private School ....... 8

     A. The Purpose of The IDEA Is To Guarantee All Children with Disabilities An
        Education that is Both Free And Appropriate ......................................................... 8

     B. The United States Supreme Court Has Thrice Held That Under Section 1415 of
        the IDEA, When a District Fails to Provide A Child With A FAPE, the District
        Must Pay For the Costs of Educating that Child ................................................... 9

     C. Section 1412 of the IDEA Provides The Remedy of Payment For Educational
        Costs when A District Fails to Provide A Child With A FAPE, And The
        Placement Chosen By The Parents is Appropriate .............................................. 14

     1.  Section 1412 Clearly Provides Payment For Education Costs ..................... 15

     2.  The Court Should Grant Summary Judgment Under Section 1412 Because The
         Statutory Scheme and Legislative Purpose of the IDEA Provided For the Remedy
         Sought By D.A.'s Parents ....................................................................................... 16

III. The Court Should Grant Summary Judgment in Favor of D.A.'s Parent Because
     The SRO's Decision Undermines The Equal Protection Guarantee Under the
     IDEA ....................................................................................................................... 18

A. The Equal Protection Provisiocn of the IDEA Guarantees A FAPE To All Children With Disabilities ................................................................................. 18

B. The Court Should Grant Summary Judgment In Favor Of The Parents Because The Equal Protection Guarantee of the IDEA Requires That Where Defendants Failed To Provide A FAPE, D.A.'s Parents Were Entitled To The Relief They Sought .......................................................................................................... 20

CONCLUSION ....................................................................................................... 23

## TABLE OF AUTHORITIES

**Federal Cases**

*Asgrow Seed Co. v. Winterboer,*
   513 U.S. 179 (1995) ...........................................................................................17

*Barnhart v. Sigmon Coal Co., Inc.,*
   534 U.S. 438, 450 (2002)....................................................................................15

*Bd. of Educ. v. Rowley,*
   458 U.S. 176 (1982) ...........................................................................................19

*Brown v. Board of Education,*
   347 U.S. 483 (1954)............................................................................................18

*Connors v. Mills,*
   34 F. Supp. 2d 795 (N.D.N.Y. 1998)...........................................................*passim*

*Daniel R.R. v. State Board of Educ.,*
   874 F.2d 1036 (5th Cir. 1989) ............................................................................14

*Draper v. Atlanta Ind. Sch. System,*
   518 F.3d 1275 (11th Cir. 2008) ..........................................................................19

*Engine Mfrs. Assn. v. South Coast Air Quality Management Dist.,*
   541 U.S. 246 (2004) ...........................................................................................16

*FDIC v. Meyer,*
   510 U.S. 471 (1994) ...........................................................................................16

*Florence County Sch. Dist. Four v. Carter,*
   510 U.S. 7 (1993) ..................................................................................*passim*

*Forest Grove v. T.A.,*
   -- U.S. --, 129 S. Ct. 2484 (2009)................................................................*passim*

*Frank G. v. Bd. of Educ. of Hyde Park,*
   459 F.3d 356,  (2d Cir. 2006, cert. denied 552 U.S. 985 (2007))........................8, 15

*Green v. Bock Laundry Mach. Co.,*
   490 U.S. 504 (1989) ...........................................................................................15

*Lillbask ex rel. Maulclaire v. State of Conn. Dept. of Educ.,*
   397 F.3d 77 (2d Cir. 2005) ...............................................................................7, 8

*Lorillard v. Pons,*
   434 U.S. 575 (1978) ....................................................................................................11

*M.V. v. Shenendehowa Cent. Sch. Dist.,*
   No. 1:06-CV-0571 (LEK/RFT), 2008 WL 53181 (N.D.N.Y. 2008).........................7

*M.W., v. New York City Dep't of Educ.,*
   No. 1:07-cv-09812-JGK, 2009 WL 857549 (S.D.N.Y. March 30, 2009)................13

*Mills v. Bd. of Educ. of D.C.,*
   348 F. Supp. 866 (D. D.C 1972).....................................................................19, 21

*Mr. X v. New York City Dep't of Educ.,*
   975 F. Supp. 546 (S.D.N.Y. 1997) ..............................................................................7

*Mrs. B. v. Milford Bd. of Educ.,*
   103 F.3d 1114 (2d Cir. 1997) ......................................................................................7

*N.R. v. Dep't of Educ.,*
   2009 WL 874061 (S.D.N.Y. 2009) ...........................................................................13

*Penn. Ass'n for Retarded Children (PARC) v. Penn.,*
   334 F. Supp. 279 (E.D. PA 1971).......................................................................18, 21

*Pub. Citizen v. United States Dep't of Justice,*
   491 U.S. 440 (1989) ...................................................................................................15

*Rome Sch. Comm. v. Mrs. B.,*
   247 F.3d 29 (1st Cir. 2001)........................................................................................14

*Sacramento City Unified Sch. Dist. v. Rachel H.,*
   14 F.3d 1398 (9th Cir. 1994) .....................................................................................14

*Sabatini v. Corning-Painted Post Area Sch. Dist.*
   78 F. Supp. 2d 138 (W.D.N.Y. 1999)........................................................................13

*Sch. Comm. of Burlington v. Dep't of Educ.,*
   471 U.S. 359 (1985) ...........................................................................................*passim*

*Susquenita Sch. Dist. v. Raelee,*
   96 F.3d 78 (3d Cir. 1996) ..........................................................................................14

*United Savings Ass'n v. Timbers of Inwood Forest Assoc.,*
   484 U.S. 365 (1988) ...................................................................................................17

*United States v. Pacheco,*
   225 F.3d 148 (2d Cir. 2000) ......................................................................................17

iv

*United States v. X-Citement Video Inc.,*
  513 U.S. 64 (1994) ...................................................................................................15

*Winkelman v. Parma City Sch. Dist.,*
  550 U.S. 516 (2007) .........................................................................................16, 18

## Federal Statutes

20 U.S.C. § 1400(c)(6) ...............................................................................17, 20, 22

20 U.S.C. § 1400(d)(1)(A)............................................................................8, 17, 19

20 U.S.C. § 1402(9)(a)...........................................................................................8

20 U.S.C.§ 1412 ..........................................................................................*passim*

20 U.S.C.§ 1415 ..........................................................................................*passim*

20 U.S.C. § 1431(a)(5) ..................................................................................17, 19

20 U.S.C. § 1463(b)(8) ..................................................................................18, 19

20 U.S.C. § 1481(d)(3)(C) .............................................................................17, 19

## Other References

Black's Law Dictionary, Abridged Seventh Version (2000)...........................................17

Merriam-Webster Online Dictionary (2009), available at: www.merriam-webster.com...........17

**INTRODUCTION**

Plaintiffs Mr. and Mrs. A (the "Parents") are the parents of D.A., a sixteen (16) year old New York City resident. The Defendants, the New York City Department of Education, *et al.* ("Defendants"), have classified D.A. as autistic. When Defendants failed to offer D.A. a free appropriate public education ("FAPE") for the 2007-2008 school year, as required by the Individuals with Disabilities Education Act ("IDEA"), D.A.'s Parents unilaterally placed him in the Rebecca School, a private school that both an Impartial Hearing Officer ("IHO") and the New York State Review Officer ("SRO") ruled is an appropriate placement given D.A.'s special needs. (*See generally* IHO Dec.; SRO Dec.)[1] D.A.'s Parents signed an enrollment agreement with the Rebecca School that obligated them to pay the tuition. Because of their limited financial means, they made a small initial payment upon signing the agreement and made some additional payments.

This action, in the practical form of an appeal from an administrative decision, relates to the Parents' attempt to obtain payment for the educational costs of obtaining a FAPE for their son for the 2007-2008 school year. The United States Supreme Court has declared that under the IDEA, school districts are required to pay for the educational costs for private school tuition where, as here (1) the school district fails to provide a FAPE, (2) the private school selected by the parent is an appropriate placement, and (3) equitable considerations favor granting the relief sought.

Here, there is no dispute that both the IHO and the SRO found that Defendants failed to offer D.A. a FAPE, that the Rebecca School was an appropriate placement to meet D.A.'s

---

[1] Hereinafter the citations to the Decisions of the Impartial Hearing Officer and the State Review Officer, which are attached as Exhibits to the Declaration of Michele Kule-Korgood dated December 7, 2009, shall be referred to as "IHO Dec. at __" and "SRO Dec. at __" respectively, and the exhibits and transcripts from the Record below, copies of which the State Review Office submitted to this Court, shall be referred to as "Exh. __" and "Tr. at __."

educational needs, and that the equities favored the Parents.[2] (IHO Dec. at 27; SRO Dec. at 7.)
It is for these reasons that the IHO granted D.A.'s Parents the relief sought: payment for the
tuition costs of the Rebecca School for the 2007-2008 school year. (IHO Dec. at 27-28.) The
only issue in dispute is the branch of the SRO's decision that, in a mere four (4) sentences and
contrary to settled case law, annulled the IHO's decision granting D.A's Parents payment for the
tuition costs of the Rebecca School. Despite the SRO's agreement that D.A.'s Parents had
fulfilled all three requirements for such relief set forth by the United States Supreme Court, the
SRO denied the relief, finding that D.A.'s Parents erred in failing seek "reimbursement for out-
of-pocket costs" and instead seeking payment for D.A's educational costs, the Rebecca School
tuition, to which they were not entitled. (SRO Dec. at 8.)

There is no case law to support the SRO's mangled interpretation of federal statute and
well-settled Supreme Court law. Under the SRO's decision, which requires parents to front
private school expenses in order to seek tuition payment when Defendants fail to provide a
FAPE, a family of limited financial means would be excluded from the relief afforded under the
IDEA. This is not the law. In fact, as set forth more fully below, federal courts have routinely
ordered payment for private school tuition where parents fulfill all three aforementioned
requirements and seek only tuition payment for educational costs, not reimbursement for actual
out-of pocket expenses. Where, as in this case, it is uncontested that Defendants failed to
provide a FAPE, the Rebecca School is an appropriate placement, and the equities favor the
relief sought, it would violate settled case law, the plain language and the purpose of the IDEA,
which guarantees a *free* and appropriate public education to *all* children with disabilities, to
permit the SRO's decision to stand. The Court should grant summary judgment in favor of

---

[2] Defendants have not appealed from the Decision of the SRO and have failed to set forth any counter-
claims in their Answer. Accordingly, the only issues raised are those raised by the Parents on their appeal here.

D.A.'s Parents, vacate the SRO's decision and should grant the relief ordered by the IHO:

payment for tuition to the Rebecca School for the 2007-2008 school year.

## STATEMENT OF FACTS

**I.      It Is Uncontested That Defendants Fail to Offer D.A., A Student
Classified As Autistic, A FAPE At the Start of the 2007-2008 School Year**

In determining the manner in which a student with special needs is to be educated, school

districts are required to prepare and recommend, with parental participation, an Individual

Education Program or "IEP." D.A. was classified as autistic by Defendants in an IEP dated

August 10, 2007. (Exh. 1.) For the four (4) school years of 2001-2002, 2002-2003, 2003-2004,

and 2004-2005, pursuant to Defendants' recommendations and set forth on D.A.'s IEPs, D.A.

attended the Andrus/Orchard School, a State-Approved private school in Yonkers. (Tr. at 319-

320). D.A.'s Parents enrolled D.A. in the Rebecca School for the 2006-2007 school year. (Tr. at

243, 197, 309; Exh. D-1). As set forth more fully below, the Rebecca School is a Non State-

Approved private therapeutic school in Manhattan, New York for children with neuro-

developmental disorders of relating and communicating, including autism.

On August 10, 2007, the Parents attended and participated in a Committee on Special

Education ("CSE") review for the 2007-2008 school year. (Tr. at 311.) The CSE classified

D.A. as autistic and recommended a twelve-month program in a classroom with a 6:1:1 ratio in

an approved private school with related services. (Exh. 1.) The school psychologist/funding

coordinator in attendance, Dr. Lope, determined that D.A.'s placement should be deferred to the

CSE's Central Based Support Team ("CBST") to find a State approved private school.[3] (Tr. at

312, Exh. 1.) When Mrs. A expressed concern that the CBST would not be able to offer a

---

[3] As part of the recommendation to defer placement to CBST, the CBST team assigns a case manager, who
sends the parents a letter of introduction, providing them with a phone number to call with questions. (Tr. at 367.)
Mrs. A's understanding when she left the meeting was that she would hear from the CBST, but she never received
the expected letter. (Tr. at 315.)

placement prior to September, the commencement of the 2007-2008 school year, Dr. Lope told

Mrs. A that she should place D.A. at the Rebecca School and "fight for funding." (Tr. at 313;

185.) In fact, as more fully set forth below, at the Impartial Hearing, Dr. Lope admitted that the

CSE failed to offer a recommendation for the start of the school year and, for that reason, D.A.

was "supposed to" start the 2007-2008 school year at the Rebecca School. (Tr. at 375.)

The CBST failed to offer D.A. a placement prior to the commencement of the 2007-2008

school year. (Tr. at 375-6.) Moreover, although required to do so in such a situation, the CBST

failed to create an Interim Service Plan ("ISP") for D.A. pending its offer of placement for the

2007-2008 school year. (Tr. at 371-72, 376-77). The Parents were never contacted by the

CBST. (Tr. at 316.) Accordingly, the Parents, through their attorneys, sent a letter to the CSE

on August 21, 2007, indicating that D.A. would start the school year at the Rebecca School due

to the CSE's failure to provide him with a FAPE. (Exh. P.)

**II.     It Is Uncontested That D.A.'s Parents Unilaterally Place D.A. In the Rebecca**
**        School, An Appropriate Placement to Meet D.A.'s Unique Educational Needs**

At the end of September 2007, the Parents were contacted by two State-Approved private

schools, Greenberg and Hawthorne, which they visited. (Tr. at 177-80.) Neither of these two

schools offered D.A. a placement. (Tr. at 179-80.) Mr. A returned the phone call of a third

school on two occasions, AMAC, but never heard back from this school. (Tr. at 181-3.) No

placement was offered for D.A. for the 2007-2008 school year. (Tr. at 183, 185.) Thus, on

October 18, 2007, Mr. A signed an enrollment contract with the Rebecca School for the period of

September 10, 2007 to August 2, 2008.    (Tr. at 338; Exh. H.) The tuition for the Rebecca

School for that entire twelve (12) month term was $84,900. (Exh. H.) Under paragraph 4(b) of

the enrollment contract, the Parents were "individually and jointly responsible for the full tuition

charges." (*Id.*)

4

Due to the Parents' financial situation, the Parents were unable to pay the full tuition upon signing the enrollment contract. Mrs. A's income was $69,094 in 2006 and $61,795.33 in 2007. (Exh. M & N.) Mr. A's sole income in 2007 was from social security benefits totaling $12,264. (Tr. at 185-6; Exh. O.)  However, Mr. and Mrs. A were able to make an initial payment of $1,000 on October 30, 2007, and thereafter began making a number of subsequent monthly payments beginning in or around September of 2008. (Tr. at 245-6; Exh. G.)

**III.    It is Uncontested That An IHO and The SRO Agree That Defendants** Failed **To Provide A Free Appropriate Public Education, That the Rebecca School Is Appropriate, And That The Parents' Cooperated With Defendants**

On May 22, 2008, the Parents filed an impartial hearing request under the IDEA seeking payment for tuition and a declaratory finding that Defendants had failed to offer D.A. a FAPE for the 2007-2008 school year. An impartial hearing was held on September 18, 2008, September 23, 2008, and October 21, 2008. (IHO Dec. at 2.)

In a 26-page Findings of Fact and Decision dated December 1, 2008, the Impartial Hearing Officer ("IHO") correctly found that Defendants failed to offer D.A. a FAPE; that the Rebecca School was an appropriate placement to meet D.A.'s educational needs; and that the equitable considerations supported the parents' claims for tuition payment. (IHO Dec. at 22-27.)

The IHO correctly found that based upon well settled law and because "[the parents] entered into a contract for educational services with the Rebecca School and are not financially able to fully pay the tuition....", the parents were entitled to payment of tuition for the costs of D.A.'s education at the Rebecca School for the 2007-08 school year. (*Id.* p. 27.) Accordingly, the IHO awarded payment for the Rebecca School tuition for the 2007-08 school year. (*Id.*)

Defendants appealed the IHO's ruling to the New York State Review Office ("SRO"). In a decision dated March 2, 2009, the SRO found that the IHO's Decision was correct with respect to her findings that Defendants had failed to provide a FAPE; that the Rebecca School was an

appropriate placement for D.A. for the 2007-08 school year; and the equities favored the Parents, who cooperated with Defendants. (SRO Dec. at p. 7.)

However, the SRO annulled the portion of the IHO's decision that found the parents were entitled to payment of D.A.'s tuition costs at the Rebecca School for the 2007-08 school year asserting that:

> the parents specifically limited the relief they sought to funding of the student's tuition at the Rebecca School for the 2007-08 school year. Under the circumstances of this case, where the parents are not requesting reimbursement for out-of-pocket costs or direct payment for compensatory education services, I find that the parents are not entitled to funding of the student's tuition.

(*Id.* p. 8) (internal citations omitted).

D.A.'s Parents appeal from the decision of the SRO to the extent that the SRO annulled the branch of the IHO's decision that found the parents were entitled to payment of D.A.'s tuition costs at the Rebecca School for the 2007-08 school year because "where [D.A.'s parents] are not requesting reimbursement for out-of-pocket costs or direct payment for compensatory education services, I find that [D.A.'s parents] are not entitled to funding of the student's tuition." ((*Id.* p. 8) (internal citations omitted); (Compl. ¶¶ 8-10.)

Defendants did not appeal from any portion of the decision of the SRO Decision. (*See generally* Answer). Thus, the only legal question at issue here is whether under the IDEA, parents are entitled to payment for the educational costs of an appropriate placement where Defendants have failed to provide a FAPE, regardless of whether the parents were able to pay the educational costs of the placement out-of-pocket. The answer is yes.

## ARGUMENT

### I.    Standard of Judicial Review

This Court has broad discretion to determine the only legal issue here, whether the SRO erred in finding, in four sentences wholly unsupported by legal reasoning or analogous case law,

that D.A.'s Parents were not entitled to payment for the educational costs of D.A.'s tuition at the Rebecca School because, essentially, as a result of their financial situation, they had failed to pay the full cost of the Rebecca School out-of-pocket.

"A summary judgment motion in an IDEA case is, more accurately, 'an appeal from an administrative determination, not a summary judgment.'" *M.V. v. Shenendehowa Cent. Sch. Dist.*, No. 1:06-CV-0571 (LEK/RFT), 2008 WL 53181 at *3 (N.D.N.Y. Jan. 2, 2008) (quoting *Lillbask ex rel. Maulclaire v. State of Conn. Dept. of Educ.*, 397 F.3d 77, 83 n. 3 (2d Cir. 2005)). Thus, "[i]n an IDEA action, a motion for summary judgment turns on 'whether the administrative record, together with any additional evidence, establishes that there has been compliance with the IDEA's processes and that the child's educational needs have been appropriately addressed.'" *M.V.*, 2008 WL 53181 at *3 (quotations omitted). The legal conclusions of the State Review Officer are subject to de novo review, with no deference afforded to any conclusions of law relating to the proper interpretation of the federal statute and its requirements. *Lillbask v. Conn. Dep't of Educ.*, 397 F.3d at 82 (quoting *Mrs. B. v. Milford Bd. of Educ.*, 103 F.3d 1114 (2d Cir. 1997); *see Mr. X v. New York City Dep't of Educ.*, 975 F. Supp. 546, 558 (S.D.N.Y. 1997) ("[I]f the conclusions of the hearing and review officers are 'unsupported by the record as a whole and incorrect as a matter of law, they simply [do] not merit deference.") (quoting *Evans. v.. Bd. of Educ. of Rhinebeck Comm. Sch. Dist.*, 930 F. Supp. 83, 102 (S.D.N.Y. 1996)) Notably, the SRO did not provide any rationale for denying the relief granted by the IHO, nor for his holding that payment of tuition is impermissible under these circumstances. (SRO Dec. at 8.) Instead, only four (4) sentences of the entire decision address this legal issue. (*Id.*) In fact, this Court has "broad discretion in considering equitable factors

relevant to fashioning relief." *M.V.*, 2008 WL 53181, at *5 (quotation omitted); *see* 20 U.S.C. § 1415(i)(2)(C)(iii)(2006).

As set forth above, the only issue for this Court to determine is the legal issue appealed by the Parents. That legal issue is subject to de novo review by this Court. *Lillbask*, 397 F.3d at 82. Upon review, the Court should grant summary judgment in favor of the Parents because the SRO's decision thwarts the explicit purpose of the IDEA to guarantee a free appropriate public education to all children by excluding parents of limited means from availing themselves of the full range of IDEA's remedies.

**II.    The Court Should Grant Summary Judgment in Favor of The Parents Because the IDEA Authorizes The Court To Order Payment Of Tuition Costs Where, As Here, Defendants Have Failed to Provide a FAPE, When A Parent Has Unilaterally <u>Placed A Child With Disabilities In An Appropriate Private School</u>**

   **A.    The Purpose of The IDEA Is To Guarantee All Children with Disabilities An Education that is Both Free And Appropriate**

The express purpose of the IDEA is "to ensure that all children with disabilities have available to them a free appropriate public education that emphasizes special education and related services designed to meet their unique needs...." 20 U.S.C. § 1400(d)(1)(A); *see Sch. Comm. of Burlington v. Dep't of Educ.*, 471 U.S. 359, 367 (1985). In exchange for receipt of federal funds, New York has agreed and is required to guarantee a free, appropriate public education to **every** child with a disability. 20 U.S.C. 1412(a)(1)(A).

Where, as here, "a state fails in its obligation to provide a free appropriate public education to a handicapped child, the parents may enroll the child in a private school and seek funding for the cost of the private school from the state." *Frank G. v. Bd. of Educ. of Hyde Park*, 459 F.3d 356, 363 (2d Cir. 2006, *cert. denied* 552 U.S. 985 (2007))) (citing *Burlington*, 471 U.S. at 370). The IDEA defines a free, appropriate public education, in relevant part, as one that is "at public expense." 20 U.S.C. § 1402(9)(a). In determining whether parents are entitled to

payment of tuition costs, the Supreme Court has established a three pronged test: (1) did the school district offer a FAPE; (2) was the private placement appropriate to meet the child's needs; and (3) do equitable considerations favor granting the relief. *See Burlington*, 471 U.S. at 370, 374 . Here, both the IHO and the SRO found that all three prongs were met. The SRO, *sua sponte*, created a fourth prong, that parents must seek reimbursement for "out-of pocket" costs in order to be entitled to payment for tuition. As set forth below, this requirement violates the plain language and the purpose of the IDEA to guarantee a free appropriate public education to all children with disabilities.

**B.    The United States Supreme Court Has Thrice Held That Under Section 1415 of the IDEA, When a District Fails to Provide A Child With A FAPE, the District Must Pay For the Costs of Educating that Child**

In the past twenty-five years, the Supreme Court has repeatedly found that where, as here, a district fails to provide a FAPE, the private school chosen by the parents is appropriate, and the equities favor the parents, Section 1415 of the IDEA guarantees *all* children with disabilities payment for the tuition costs of the private school. The measure of relief provided for by the IDEA, as set forth in its plain language and case law, is tied to the costs of the child's education and not, as the SRO suggests, to the costs the parents have been able to afford to pay "out-of pocket."

In the landmark case of *Burlington* in 1985, the Supreme Court of the United States held that when a district failed to offer a FAPE to a child with a disability, the Court had the power to order payment of tuition for an appropriate private school. *Burlington*, 471 U.S. at 369; *accord Florence County Sch. Dist. Four* v. *Carter*, 510 U.S. 7, 15-16 (1993). The Court relied on the broad equitable powers conferred under Section 1415 of the IDEA ("Section 1415"), which

authorizes a court to "grant such relief as the court determines is appropriate".[4]  *Burlington*, 471

U.S. at 369.  In *Burlington*, the parent of a child with disabilities unilaterally enrolled the child in

a private school after determining that the district's proposed placement was inappropriate.  *Id.* at

362.  In a unanimous decision, this Court held that IDEA's "appropriate" relief provision

authorized a court to reimburse the parent for the tuition: "[r]eimbursement merely requires the

[district] to belatedly pay expenses that it should have paid all along and would have borne in the

first instance had it developed a proper IEP.    Such a *post hoc* determination of financial

responsibility was contemplated in the legislative history...."   *Id.* at 370-71.   The Court

explained that, without such a remedy, "the child's right to a *free* appropriate public

education...would be less than complete," *Burlington*, 471 U.S. at 370, and that "Congress

undoubtedly did not intend this result." *Id.*  The Court reasoned that undergirding the due process

rights of the IDEA was the obligation of a court or hearing officer to ensure that a child with a

disability receive an education that is both appropriate and free (at no cost to the child's parents).

*See id.*; *Carter,* 510 U.S. at 10-15.

Eight years later, the United States Supreme Court unanimously reaffirmed *Burlington*

in the *Carter* case, holding that "a court may order reimbursement for parents who unilaterally

withdraw their child from a public school that provides an inappropriate education under IDEA."

*Carter,* 510 U.S. at 9.[5]  In June of 2009, the Supreme Court again reaffirmed *Burlington* and

*Carter* in the *Forest Grove* case, holding that "[c]onsistent with our decisions in *Burlington* and

*Carter,* we conclude that IDEA authorizes reimbursement for the cost of private special

---

[4] The IDEA has been amended since *Burlington*, and the relevant section referred to in *Burlington* is now Section 20 U.S.C 1415(i)(2)(c)(iii).

[5] In *Carter*, the parents of a child with a disability enrolled her in private school because they believed the district's IEP was inappropriate.   510 U.S. at 10   The Court held that the parents were entitled to tuition reimbursement even though the private school did not meet state education standards, stating that to construe IDEA "to bar reimbursement in the circumstances of this case would defeat th[e] statutory purpose" of "ensur[ing] that children with disabilities receive an education that is both appropriate and free." *Id.* at 13-14.

education services when a school district fails to provide a FAPE and the private-school placement is appropriate, regardless of whether the child previously received special education or related services through the public school." *Forest Grove School Dist. v. T.A.*, -- U.S. --, 129 S. Ct. 2484, 2496 (2009). The question presented in *Forest Grove* was whether 1997 Amendments to the IDEA prohibited reimbursement for private-education costs if a child has not "previously received special education and related services under the authority of a public agency." §1412(a)(10)(C)(ii). The Court held that the Amendments imposed no such bar. *Forest Grove*, 129 S. Ct. at 2396.[6]

In fact, the Court in *Forest Grove* held that Congress endorsed the *Burlington* and *Carter* interpretations of Section 1415 by reauthorizing and amending the statute in 1997 while leaving the relevant language of that section unchanged. *Forest Grove*, 129 S. Ct. at 2492. *See Lorillard v. Pons*, 434 U.S. 575, 580 (1978). The *Burlington, Carter*, and *Forest Grove* cases demonstrate that Section 1415's broad remedial provision is designed to ensure that *all* eligible children receive an education that is both *free* and appropriate, which requires that where districts have failed to provide a FAPE, districts must "belatedly pay expenses that it should have paid all along." *Burlington*, 471 U.S. at 370-71.

Here, there is no dispute that: Defendants failed to provide a FAPE; to remedy that failure, D.A.'s Parents placed him in the Rebecca School and signed an enrollment agreement with the Rebecca School; the educational costs for D.A.'s placement at the Rebecca School were $84,900; the Rebecca School was an appropriate placement for D.A.; and the equitable considerations favored D.A.'s Parents. Thus, under well-settled case law, D.A's Parents were

---

[6] The SRO cited Section 1412 (as well as *Burlington* and *Carter*) in support of his decision. The Supreme Court has held that Section 1412 of the IDEA, which also provides for reimbursement for the costs of enrollment in a private school is "best read as elucidative rather than exhaustive." *Forest Grove*, 129 S. Ct. at 2493. As set forth here and in subsection II.C., *infra*, relief is available to parents under both sections 1415 and 1412 and the SRO's interpretation of Section 1412 was erroneous.

entitled to have Defendants "belatedly pay expenses that they should have paid all along and would have borne in the first instance had it developed a proper IEP", *i.e.*, the full tuition for the Rebecca School. *Burlington*, 471 U.S. at 370-71.

Indeed, several federal courts in the Districts of New York have found that under the IDEA and Supreme Court precedent, parents are entitled to payment for prospective or direct tuition payment when they can not pay out-of-pocket for tuition in the first instance. In 1998, the Northern District in New York faced the issue of whether prospective payment to a private school was an available remedy under the IDEA when the district failed to offer a child a FAPE. *Connors v. Mills*, 34 F. Supp. 2d 795 (N.D.N.Y. 1998). The court found that the Supreme Court's decisions in *Burlington* and *Carter* were premised upon a desire to provide children with meaningful access to needed education in keeping with Congress' intentions under the IDEA. *Id.* The court found the difference between reimbursement and prospective tuition payment is an issue of "the *time* of payment" and "is irrelevant to the fact of payment." *Id.* at 805. The court reasoned that the IDEA should not be applied in a discriminatory manner against families without economic means, and noted that where a parent did not have adequate means to finance unilateral placement but was told by a court years later that they were right, "the victory would not only be empty but meaningless." *Id.* at 804. The Northern District noted the severe disparate impact on poor children if prospective payment cannot be ordered: "It simply cannot be the case that an act designed to grant 'all' disabled children access to needed services would undermine that very goal by making such access dependent upon a family's financial situation." *Id.* at 804. The court held that once the *Burlington* requisites were met and the parent proved that they did not have the financial means to front the tuition, a district must immediately pay the cost of the placement. *Id.*

In *Sabatini v. Corning-Painted Post Area Sch. Dist.*, the Western District of New York court issued an injunction requiring a district to pay prospectively for a child with a disability to attend a non-approved private school, finding that the fact that parents sought direct payment of the tuition, rather than "reimbursement," was a "distinction without a difference . . . since the ultimate issue in [both cases] is the same: whether the school district can be made under the IDEA to disburse funds to cover a child's cost of education at a private school." 78 F. Supp. 2d 138, 142 n. 1 (W.D.N.Y. 1999).[8]

To allow the SRO to add a fourth prong prior to an award of relief, that parents must seek reimbursement for "out-of-pocket" costs only, in situations where a district fails to offer a FAPE to a child whose family is of lesser economic means, works a tremendous injustice that the IDEA does not countenance. As in the *Forest Grove* case, D.A. was not offered an IEP with a recommended school placement. (Tr. at 183.) Immunizing a district's failure to offer a placement in situations such as this, where the parents are not wealthy enough to front the costs of a placement, would produce a rule that is both irrational and discriminatory. Though the IDEA does provide for a due process hearing to challenge a district's failure to offer a FAPE,

---

[8] Consistent with Supreme Court precedent, other federal courts have awarded payment of tuition as relief in cases whether parents have signed enrollment contracts with private schools and only placed a deposit, thus there is an outstanding educational expense, but have not had the financial means to go "out-of-pocket" for the tuition. *See N.R. v. Dep't of Educ.*, 2009 WL 874061 (S.D.N.Y. 2009). Earlier this year, the Southern District held that a parent seeking direct payment for a nonpublic school has standing under the IDEA, reasoning that although the parent obtained an appropriate education for their child in a nonpublic school, it was not at public expense. *S.W., on behalf of M.W., v. New York City Dep't of Educ.*, No. 1:07-cv-09812-JGK, 2009 WL 857549 (S.D.N.Y. March 30, 2009). In dicta, the Southern District suggested that "there may be good reasons why direct tuition payment should be a remedy available to a needy parent on either a prospective or retrospective basis," but did not decide the case on this issue as the case was decided on factual issues. *Id* at *10-*11.

13

that right to due process must be viewed in light of the reality of the fact that due process is

lengthy and often does not produce a timely result for a child. Courts have repeatedly noted that

the IDEA's review process is ponderous, and that decisions often come long after the school year

in question is over. *See Forest Grove,* 129 S. Ct. at 2491; *Burlington,* 471 U.S. at 370; *Rome*

*Sch. Comm. v. Mrs. B.,* 247 F.3d 29, 31 (1st Cir. 2001); *Daniel R.R. v. State Board of Educ.,* 874

F.2d 1036, 1041 (5th Cir. 1989); *see also Sacramento City Unified Sch. Dist. v. Rachel H.,* 14

F.3d 1398, 1403 (9th Cir. 1994). The Third Circuit noted, "The prospect of reimbursement at the

end of the litigation turnpike is of little consolation to a parent who cannot pay the toll at the

outset." *Susquenita Sch. Dist. v. Raelee,* 96 F.3d 78, 87 (3d Cir. 1996). A contrary reading of the

IDEA, limiting remedies involving tuition to reimbursement, would produce a tragic injury.

**C.**   **Section 1412 of the IDEA Provides The Remedy of Payment For Educational Costs when A District Fails to Provide A Child With A FAPE, And The Placement Chosen By The Parents is Appropriate**

Section 1412 of the IDEA provides the remedy that "a court or hearing officer may

require the agency to reimburse the parents for the cost of [ ] enrollment in a private school if the

court of hearing officer finds that the agency had not made a [FAPE] available to the child in a

timely manner..." 20 U.S.C. § 1412(a)(10)(C)(ii). As set forth in subsection B, *supra,* the

Supreme Court has clearly decided that Section 1412 elucidates rather than exhausts the relief

granted under the IDEA. *Forest Grove,* 129 S. Ct. at 2493.

The SRO, in denying the portion of the IHO's decision that found the parents were

entitled to payment of D.A.'s tuition costs at the Rebecca School for the 2007-08 school year,

misapplied Section 1412 by holding that it categorically limits reimbursement to "out-of-pocket"

expenses. (SRO Dec. at 8.) The SRO narrowly interpreted Section 1412 in a vacuum, in a

manner inconsistent with the statutory scheme and legislative purpose of the IDEA to ensure

FAPE for *all* children with disabilities.

14

1.    Section 1412 Clearly Provides Payment For Education Costs

Where parties disagree with the plain meaning under the statute, a court's "first task 'is to determine whether the language at issue has a plain and unambiguous meaning with regard to the particular dispute in the case.'" *Frank G.*, *supra* at 8-9, 459 F.3d at 368 (citing *Barnhart v. Sigmon Coal Co., Inc.*, 534 U.S. 438, 450 (2002)). Where statutory language is unambiguous and "the statutory scheme is coherent and consistent," the court will end its inquiry, unless the result reached by applying the plain language is sufficiently absurd to override its unambiguous terms. *Barnhart*, 534 U.S. at 450, 459 (internal quotation marks and citation omitted); *United States v. X-Citement Video Inc.*, 513 U.S. 64, 69 (1994); *Pub. Citizen v. United States Dep't of Justice*, 491 U.S. 440, 454 (1989); *Green v. Bock Laundry Mach. Co.*, 490 U.S. 504, 509 (1989).

Section 1412(a)(10)(C) is comprised of four subsections, two of which are relevant here. Subsection (C)(ii) provides that when a district fails to provide a FAPE, "a court or hearing officer may require the agency to reimburse the parents for the ***cost of [ ] enrollment in a private school***...." 20 U.S.C. § 1412(a)(10)(C)(ii) (emphasis added). However, as noted in *Frank G.* and *Forest Grove*, subsection (C)(ii) is not the only part of Section 1412(a)(10)(C) that speaks to payment of private school. *Forest Grove*, 129 S. Ct. at 2492-94; *Frank G.*, 459 F.3d at 368-70 Indeed, within the language of 20 U.S.C. 1412(a)(10)(C), Congress suggested a much broader reading of "reimburse" than that applied by the SRO. Subsection (C)(i) provides that when a district provides a FAPE, then the district is not required "to ***pay for the cost*** of [a private] education." 20 U.S.C. § 1412(a)(10)(C)(i) (emphasis added). Thus, read together, subsections (C)(i) and (ii) recognizes the it is the obligation of a district to pay "for the cost of" private school if a district fails to provide a FAPE.

The SRO's decision, in denying the Parents payment for the cost of the Rebecca School tuition because they failed to seek only reimbursement for "out-of-pocket" costs, clearly

wrenches turns plain meaning of the IDEA on its head. The SRO's interpretation of Section 1412 also takes subsection (C)(ii) completely out of context. It would create a larger safe harbor for school districts by allowing them to avoid any obligation to pay for private-school for families who cannot afford to pay tuition out-of-pocket. It cannot have been Congress' intent to shelter a school district that has not provided any educational placement, as Defendants undeniably failed to do here. Under the SRO's theory, D.A. should not have been educated for the 2007-2008 school year. The SRO proposes a windfall for Defendants that is neither just nor equitable nor supported by the law. Under Section 1412 of the IDEA, D.A.'s Parents were entitled to D.A.'s educational costs as a remedy for Defendants' failure to provide a FAPE and the SRO decided wrongly, and this Court should grant the Parents summary judgment.

      2.     The Court Should Grant Summary Judgment Under Section 1412
                Because The Statutory Scheme and Legislative Purpose of the
                IDEA Provided For the Remedy Sought By D.A.'s Parents

The SRO has taken a narrow interpretation of Section 1412 and a tortured reading that is contrary to the language and legislative intent behind the statutory scheme of the IDEA. As the IDEA does not define the word "reimburse," to the extent the Court believes that there is any ambiguity, statutory construction must begin with the language employed by Congress and the assumption that the ordinary meaning of the language accurately expresses the legislative purpose. *See Winkelman v. Parma City Sch. Dist.*, 550 U.S. 516, 523 (2007) ("[A] proper interpretation of [IDEA] requires a consideration of the entire statutory scheme."). *Engine Mfrs. Assn. v. South Coast Air Quality Management Dist.*, 541 U.S. 246, 252 (2004). *See also FDIC v.*

*Meyer*, 510 U.S. 471, 476 (1994).[9]  "We must interpret [a] specific provision in a way that renders it consistent with the tenor and structure of the whole act or statutory scheme of which it is a part." *United States v. Pacheco*, 225 F.3d 148, 154-55 (2d Cir. 2000) (citing *United States v. Bonanno Organized Crime Family of La Cosa Nostra*, 879 F.2d 20, 24 (2d Cir. 1989)); *United Savings Ass'n v. Timbers of Inwood Forest Assoc.*, 484 U.S. 365 (1988) (Where the use of a permissible meaning of a word may produce a substantive effect that is not compatible with the rest of the law, it is important to examine the "provisions of the whole law" its "object and policy" and "subject matter.")

The intent and purpose of the IDEA is to provide a *free* and appropriate public education to *all* students with a disability. *See* 20 U.S.C. § 1400(c)(6); 20 U.S.C. §1400(d)(1)(A); *Burlington*, 471 U.S. at 367 ("Congress stated the purpose of the Act in these words: to assure that all handicapped children have available to them . . . a free appropriate public education . . ."") *Carter*, *supra* at 11, 510 U.S. at 13 ("[The] IDEA was intended to ensure that children with disabilities receive an education that is both appropriate and free.") Throughout the IDEA, Congress has expressed a clear intent to support and protect the interests of families without financial resources. *See e.g.*, 20 U.S.C. § 1431(a)(5) ("Congress finds that there is an urgent and substantial need to enhance the capacity of State and local agencies and service providers to identify, evaluate, and meet the needs of all children, particularly minority, low-income, inner city, and rural children, and infants and toddlers in foster care."); 20 U.S.C. § 1481(d)(3)(C) (providing that in awarding grants and contracts the US DOE may give priority to, inter alia,

---

[9] Should the Court consider dictionary definitions of "reimbursement," which Courts rely upon to define words in statutes, *Asgrow Seed Co. v. Winterboer*, 513 U.S. 179, 187 (1995), even dictionary definitions of "reimbursement" support the Parents' assertion that the IDEA entitles them to payment for costs. Black's Law Dictionary defines reimbursement as "1: repayment; 2: indemnification." Black's Law Dictionary, Abridged Seventh Version (2000). Indemnification is defined by Black's Law Dictionary as "the action of compensating for loss or damage sustained, the compensation so made." *Id.* Webster's online dictionary also defines reimburse as "1: to pay back to someone: repay. 2: to make restoration or payment of an equivalent to." Merriam-Webster Online Dictionary (2009), available at: www.merriam-webster.com.

"projects that address the needs of children from low income families"); 20 U.S.C. § 1463(b)(8) (states must describe the steps the SEA will take to ensure that poor and minority children are not taught at higher rates by teachers who are not highly qualified.") As the Supreme Court reiterated in *Winkelman, supra* at 16, parents' rights under the IDEA must be interpreted so as to ensure that some children are not excluded from its protections and benefits: "[W]e find nothing in the statute to indicate that when Congress required States to provide adequate instruction to a child 'at no cost to parent,' it intended that only some parents would be able to enforce that mandate." 550 U.S. at 532.

The narrow definition of reimburse provided by the SRO yields such a result – where the school district fails to offer the child a FAPE, parents without financial means to pay "out-of-pocket" costs for tuition will be left without any remedy, leaving the child without a free and appropriate education.  In light of the Congressional purpose of the IDEA, the word reimburse cannot be construed to narrowly permit only retroactive reimbursement of "out-of pocket costs" to the private school, as such a construction would limit the statutory remedy of private school in the absence of FAPE only to the wealthiest families, leaving all other children with similar financial situations to the Parents without a remedy. Such an interpretation, at odds with the plain language, would frustrate the purposes of the IDEA.

**III.    The Court Should Grant Summary Judgment in Favor of D.A.'s Parent Because The SRO's Decision Undermines The Equal Protection Guarantee Under the IDEA**

    **A.    The Equal Protection Provision of the IDEA Guarantees A FAPE To All Children With Disabilities**

In *Brown v. Board of Education*, the United States Supreme Court stated that "where the state has undertaken to provide [a child an education], it is a right which must be made available to ***all on equal terms***." 347 U.S. 483, 493 (1954) (emphasis added).  Two federal cases following *Brown* found that, for this reason, children with disabilities had a right to an adequate,

publicly supported education. *See Mills v. Bd. of Educ. of D.C.*, 348 F. Supp. 866 (D. D.C 1972) (Board of Education denied *due process* when it failed to provide children with behavioral problems, emotional disturbances, and mental retardation with public specialized education); *Penn. Ass'n for Retarded Children (PARC) v. Penn.*, 334 F. Supp. 279 (E.D. PA 1971). These two federal cases were, in large measure, the impetus for the passage of IDEA and its progenies, in which Congress recognized that although "local educational agencies, and educational service agencies are primarily responsible for providing an education for *all* children with disabilities, it is in the national interest that the Federal Government have a supporting role in assisting State and local efforts to educate children with disabilities in order to improve results for such children and to *ensure equal protection of the law.*" 20 U.S.C. § 1400(c)(6) (emphasis added); *see Bd. of Educ. v. Rowley*, 458 U.S. 176, 192 (1982).

To guarantee equal protection, as set forth in Section II.C., *supra*, the IDEA's core principle is a guarantee of FAPE to *all* eligible children. 20 U.S.C. §1400(d)(1)(A); *Forest Grove*, 129 S.Ct. at 2494; *Carter*, 510 U.S. at 13; *Burlington*, 471 U.S. at 367. This includes, as set forth fully in Section II.C., a clear intent to support and protect the interests of families without financial resources throughout the IDEA. *See e.g.*, 20 U.S.C.§ 1431(a)(5); § 1463(b)(8) § 1481(d)(3)(C).[10] Indeed "[i]n accepting IDEA funding, States expressly agree to provide a FAPE to *all* children with disabilities." *Forest Grove*, 129 S.Ct. at 2495, 174 L.Ed.2d 168 (citing 20 U.S.C. §1412(a)(1)(A) (emphasis added)).

---

[10] *Draper v. Atlanta Ind. Sch. System*, 518 F.3d 1275 (11th Cir. 2008) (holding that prospective payments were authorized pursuant to IDEA and the IDEA was not intended to treat children with disabilities from wealthier families more favorably than poorer families, rejecting the district's argument that prospective payment was tantamount to damages); *Connors v. Mills*, 34 F. Supp. 2d 795, 804 (N.D.N.Y. 1998) (ruling that parents are entitled to prospective tuition payment because the IDEA guarantees equal protection under the law to all children with disabilities).

19

**B.**     **The Court Should Grant Summary Judgment In Favor Of The Parents Because The Equal Protection Guarantee of the IDEA Requires That Where Defendants Failed To Provide A FAPE, D.A.'s Parents Were Entitled To The Relief They Sought**

The IDEA ensures D.A. (and all eligible children with disabilities) equal protection regarding his right to a FAPE. 20 U.S.C. § 1400(c)(6).  Because Defendants failed to provide D.A. a FAPE, the equal protection provision of the IDEA guaranteed that the Parents were entitled to avail themselves of all remedies available under the IDEA, regardless of their financial resources.  The SRO eradicated this guarantee in finding that D.A.'s Parents were limited to seeking relief for reimbursement *only* of their "out-of-pocket costs....", (SRO Dec. at 8), because under his decision, the IDEA does not guarantee a "free appropriate public education" unless parents initially pay out-of-pocket to fund an appropriate school when a district fails in its federally mandated duty to provide a FAPE.  The practical result of the SRO's decision is that parents of limited financial means to whom a district denies a FAPE will have no choice but to accept an IEP or placement that may be inappropriate because they cannot pay "out-of-pocket" to an appropriate private school, which may, as here, have allowed them enroll, sign a contract and owe a debt.[12]  Thus, under the SRO's interpretation of the law, parents of limited financial means are not be able to avail themselves of the remedies available under the IDEA.  Such an interpretation guts the IDEA's equal protection guarantee, derived from case law and the United States Constitution, that "*all* children with disabilities have available to them a

---

[12] In D.A.'s case, the choice was far graver.  Defendants failed to offer D.A. either a placement or an ISP at the commencement of the 2007-2008 school year.  Thus, according to the SRO's decision, the Parents here would have had no choice but to wait, as the school year passed by with D.A. out of school, until Defendants found a placement for D.A.  That result is unsupportable.

free appropriate public education." *Forest Grove*, 129 S.Ct. at 2494; *see* 20 U.S.C. § 1400(d)(1)(A); *Mills*, 348 F. Supp. 866 (D. D.C 1972); *PARC*, 334 F. Supp. 279.

This is exactly the situation contemplated in the Northern District of New York case *Connors v. Mills*, *supra* at 12, in which the Court ruled that parents of limited financial means, who can demonstrate such, are entitled to prospective tuition payment. 34 F. Supp. 2d at 804. In so ruling, the Court explained that "[i]t simply cannot be the case that [the IDEA, which is] designed to grant 'all' disabled children access to needed services[,] would undermine that very goal by making such access dependent upon a family's financial situation." 34 F.Supp.2d at 804. Similarly here, where there is no dispute that D.A.'s Parents are unable to pay the costs of their son's tuition, it would undermine the very goal of the IDEA to deny D.A.'s Parents the relief they sought. Under the equal protection guarantee of the IDEA, D.A.'s Parents were entitled to relief for the costs for their son's education and the SRO erred in seeking to limit that relief to the Parents' "out-of-pocket" expenses.

Likewise in *Forest Grove*, the Court addressed the issued of whether the 1997 Amendments to the IDEA barred reimbursement if a child had not previously received special education services, and held the IDEA authorizes reimbursement for private special education services when the public school fails to provides a FAPE and the private school is appropriate, regardless of whether the child previously received special education services. 129 S.Ct. at 2486. In doing so, the Court noted that "[t]he express purpose of the IDEA [including the 1997 amendments] is to 'ensure that ***all*** children with disabilities have available to them a free appropriate public education that emphasizes special education and related services designed to meet their unique needs,'... a factor we took into account in construing the scope of § 1415(i)(2)(C)(iii)...." *Id.* at 2494 (internal quotations omitted) (emphasis added). "Without the

21

remedy respondent seeks, a 'child's right to a *free* appropriate education ... would be less than complete.'" *Id.* at 2494-95 (*quoting Burlington*, 471 U.S. at 370). Indeed, "[a]n order awarding reimbursement of private-education costs when a school district fails to provide a FAPE merely requires the district 'to belatedly pay expenses that it should have paid all along.'" *Id.* at 2495 (*quoting Burlington*, 471 U.S. at 370-71).

The Court should grant summary judgment in favor of D.A.'s Parents in order to ensure the IDEA's equal protection guarantee that all children, even those whose parents are of limited financial resources, like D.A.'s Parents, will be able to avail themselves of the IDEA's remedies. Thus, like the child in *Forest Grove*, without the remedy D.A.'s Parents seek, D.A.'s "'right to a *free* appropriate education ... would be less than complete.'" *Id.* at 2494-95 (*quoting Burlington*, 471 U.S. at 370) (emphasis in original). But for D.A.'s Parents' unilateral placement of D.A. at the Rebecca School, it is uncontested that D.A. would not have had *any* educational placement. Defendants seek to avoid their financial responsibility to provide D.A. with a FAPE based solely on his Parents' inability to advance funds for private school tuition. Defendants should not be permitted to utilize parents' limited financial resources to shield them from their statutory obligation to provide a student with special education instruction.

## CONCLUSION

For all of the foregoing reasons, the Court should grant D.A.'s Motion for Summary Judgment finding entitlement to payment for tuition for the Rebecca School for the 2007-2008 school year totaling $84,900, reversing the decision of the State Review Officer to the extent that it denied tuition payment, and any further relief as the Court deems just and proper.

Dated:  December 4, 2009
        New York, New York

Respectfully submitted,

Michele Kule-Korgood (MKK 3278)
*Law Offices of Michele Kule-Korgood*
118-35 Queens Boulevard - 17th Floor
Forest Hills, New York  11375
Telephone (718) 261-0181
Facsimile (718) 268-2633
*mkule@nyspecialedlaw.com*
*Counsel for Plaintiffs*

-and-

Caroline J. Heller (CH-8814)
*Greenberg Traurig, LLP*
The MetLife Building
200 Park Ave.
New York, New York
(212) 801-9200

23