UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

Mr. and Mrs. A., on behalf of D.A.

               Plaintiffs,

               v.                             09 CV 5097 (PGG)

New York City Department of Education, and
JOEL KLEIN, in his official capacity as Chancellor
of the New York City School District,

               Defendants.

## MR. AND MRS. A'S MEMORANDUM OF LAW IN FURTHER SUPPORT OF MOTION FOR SUMMARY JUDGMENT

**LAW OFFICES OF MICHELE KULE-KORGOOD**
*Attorneys for Plaintiffs Mr. and Mrs. A., on behalf of D.A.*
118-35 QUEENS BOULEVARD - 17TH FLOOR
FOREST HILLS, NEW YORK 11375

MAIN NO.: (718) 261-0181
FACSIMILE NO.: (718) 268-2633

## INTRODUCTION

Section 1415 of the IDEA "directs the court to 'grant such relief as [it] determines is appropriate.' The ordinary meaning of those words confers broad discretion on the court. The *type of relief is not further specified*, except that it must be 'appropriate.'" *Sch. Comm. of the Town of Burlington v. Dep't of Educ.*, 471 U.S. 359, 369, 105 S.Ct. 1996, 2002 (1985) (emphasis added)  In *Burlington*, the United States Supreme Court recognized that a determination as to whether a school district has provided a free appropriate public education ("FAPE") often takes place after the school term covered by the IEP. *Id.* at 370. Accordingly, the *Burlington* Court was "confident that by empowering the court to grant 'appropriate' relief Congress meant to include retroactive reimbursement to parents as an available remedy in a proper case" otherwise "the child's right to a *free* appropriate public education ... would be less than complete." *Id.* (emphasis in original). Consistent with *Burlington*, in empowering courts to grant "appropriate" relief including even a "prospective injunction" requiring private school placement, Congress must have intended to include payment for the costs of an appropriate private school to parents who cannot pay out-of-pocket for the costs and rather, owe the tuition. Without this remedy, an entire class of disabled children's right to a *free* appropriate public education would be less than complete, *id.*, violating the purpose of the IDEA to provide a FAPE to all children with disabilities. Thus, this Court should grant summary judgment in favor of Plaintiffs Mr. and Mrs. A. (the "Parents") awarding tuition payment for D.A.'s education for the 2007-2008 year.

## ARGUMENT

### I. Section 1415 Provides For the Remedy of an Award of Tuition for D.A.'s Education

Defendants ask this Court to read an exclusion into Section 1415 that "appropriate" relief does not encompass payment for the educational costs of an appropriate private school when the

1

parents are not able to pay out-of-pocket for those educational costs in the first instance. This exclusion, not supported by case law or the text of the IDEA, defies the purpose of the IDEA "to ensure that all children with disabilities have available to them a free appropriate public education...." 20 U.S.C. § 1400(d)(1)(A). Indeed, the Third Circuit refused to find such an exclusion, holding that "[i]f we limited reimbursement to actual out-of-pocket expenses, we would give a narrow construction to 'appropriate[]' [relief] and this would be contrary to... the Supreme Court's broad interpretation of the term in *Burlington*..." *Bucks Co. Dep't of Mental Health/Mental Retardation v. PA.*, 379 F.3d 61, 69 (3rd Cir. 2004). Moreover, two Southern District of New York cases, one decided on February 9, 2010, support granting the precise relief sought by D.A.'s Parents. *See A.D. & M.D. v. Bd. of Educ.*, No. 08 Civ. 9424, 2010 WL 447371 (S.D.N.Y February 9, 2010); *N.R. v. Dep't of Educ.*, No. 07 CV 9648, 2009 WL 874061 (S.D.N.Y. March 31, 2009). In *A.D. & M.D*, the parents sought prospective tuition payment for an appropriate private school for the 2007-2008 school year. 2010 WL 447371 at *7. The Court reversed the SRO to the extent that it denied tuition reimbursement for the 2007-2008 school term, awarding the parents "the amount of $62,590 reflecting the amount *currently owed* to [the private school]...", recognizing that the parents were entitled to tuition costs regardless of whether they had paid them out-of-pocket. *Id.*, at * 20 (emphasis added),[1]

Defendants try to distinguish this action from *Burlington, Carter* and *Forest Grove* by arguing those cases awarded payment for expenses parents had paid.[2] This difference is not dispositive, as the holdings in *Burlington, Carter*, and *Forest Grove* depended upon the language

---

[1] Similarly, in *N.R.*, which Defendants fail to distinguish, the Court found "equitable considerations" warranted awarding the parent tuition costs for an appropriate private school when the mother owed tuition pursuant to a contract. *N.R.*, 2009 WL 874061 at *8.

[2] Notably, in *Burlington*, at the administrative level parents were awarded payment for tuition and transportation costs both paid out-of-pocket and still owed to the private school. *Burlington*, 471 U.S. at 363.

2

and purpose of the IDEA, and not the facts involved. *Forest Grove v. T.A.*, 129 S.Ct. 2484, 2491 (2009) (factual "differences [between *Burlington* and *Carter*] are insignificant... because our analysis in the earlier cases depended upon the language and purpose of the [IDEA] and *not the particular facts* involved.") (emphasis added).[3]

Defendants also wrongly contend that the Supreme Court's use of the word "reimbursement" prohibits payment for educational costs that a parent owes but has not yet paid out-of-pocket. The *Burlington* Court rejected this narrow view, stating that "reimbursement" merely means that a district should pay for the education it should have provided "all along". *Id.* at 370-71. Here, an award of tuition payment for the expenses D.A.'s Parents both paid and owe is merely requiring Defendants to pay for the education it should have provided "all along". *Id.*[4]

Finally, the IDEA needs no expansion to encompass the relief sought here, as Defendants suggest, because *Burlington* held that Section 1415 gives courts broad discretion to fashion relief, which encompasses the relief sought by D.A.'s Parents. *Burlington*, 471 U.S. at 369.[5] Further, in reauthorizing and amending the IDEA in 1997 and 2004 while leaving the relevant language of Section 1415 unchanged, it is evident that Congress intended to preserve the Court's

---

[3] Defendants cite.*M.S. v. Yonkers*, for the requirement of proving the private school appropriate to ensure that any relief granted furthers IDEA's purposes. This illuminates the applicable standard here: that the scope of allowable remedies under the IDEA are to be viewed through the lens of whether the remedy furthers the stated purpose of the IDEA to provide a FAPE to all children with disabilities. 231 F.3d 96 (2d Cir. 2000)

[4] Defendants also erroneously attempt to distinguish *Connors*. The *Connors* case is applicable, holding that the difference between reimbursement and prospective tuition payment is an issue of "the time of payment" and "is irrelevant to the fact of payment."*Connors*, 34 F.Supp.2d at 805.

[5] Courts have long held that the broad discretion granted under Section 1415 provides for relief not explicitly stated in the IDEA, such as compensatory education. *See Lester H. v. Gilhool*, 916 F.2d 865, 872-73 (3d Cir. 1990); *Jefferson County Bd. of Educ. v. Breen*, 853 F.2d 853, 857-58 (11th Cir. 1988).

3

broad equitable powers to grant any "appropriate relief", including that sought by D.A.'s Parents.[6] *See Forest Grove*, 129 S. Ct. at 2492; *see Lorillard* v. *Pons*, 434 U.S. 575, 580 (1978).

The cases Defendants cite in support of their opposition are not relevant to the relief sought by D.A.'s parents.. In *Diaz-Fonseca v. Puerto Rico*, the Court found that the IDEA does not entitle parents to tuition payment for future school years in which the district has not yet had the opportunity to create an IEP. 451 F.3d 13, 32 (1st Cir. 2006). The case at bar concerns Defendants' denial of FAPE for the 2007-2008 school year, not a future school term in which an IEP has not been created. Defendants attempt to analogize the present case by arguing that D.A.'s Parents are somehow seeking future relief because this Court has not yet granted the relief. This is not the holding of *Diaz-Fonseca*, and it is also illogical because it would mean that no parent could ever seek relief because a court or hearing officer had not yet granted it. Further, *A.A. v. Board of Education* merely held that in a class action, the plaintiffs were not entitled to general compensatory damages where they did not attempt to demonstrate that educational costs had accrued for every plaintiff. 196 F.Supp.2d 259, 264 (E.D.N.Y 2002). Here, D.A.'s Parents demonstrated that they owe tuition for educating D.A.. Thus, pursuant to Section 1415, the Court should grant D.A.'s Parents Motion for Summary Judgment and award the tuition costs of the Rebecca School for the 2007-2008 school year.

II.   **Section 1412 Provides For An Award of Tuition for D.A.'s Education**

This Court may also grant the relief sought by D.A.'s Parents under Section 1412. The *Forest Grove* Court found that Section 1412 provides separate remedies in addition to the broad

---

[6] Defendants' attempts to distinguish *Draper v. Atlanta Indep. Sch. Sys.*, 518 F.3d 1275, 1286-87 (11th Cir. 2008) and *Sabatini v. Corning-Painted Post Area Sch. Dist.*, 78 F. Supp.2d 138, 142 (W.D.N.Y. 1999) fail because these cases recognize that parents are entitled to the payment of tuition for an appropriate private school without regard to whether the parent has yet paid out-of-pocket for the tuition. Indeed, as in *Draper*, Defendants' prior conduct concerning D.A. was egregious. *See* Section V(B) *infra*.

relief available under Section 1415. 129 S.Ct. at 2493 (Section 1412 is "elucidative rather than exhaustive.") Defendants assert that this Court should define the word "reimburse" subsection of 1412 as payment for "out-of-pocket" expenses only. Not only is this definition not found in the IDEA, but it is inconsistent with its statutory scheme and Congressional intent.

Further, whether the Court adopts the definition cited by either D.A.'s Parents or Defendants--"repayment" or "indemnification"-- the determination as to the relief available under Section 1412 remains the same. The dispositive question is: which costs did the Congress intend States to reimburse? Section 1412's plain language requires States to "reimburse" (repay or indemnify) the "*cost*... of private school enrollment" for the disabled child. 20 U.S.C. § 1412(a)(10)(C)(ii) (emphasis added). No one denies that D.A.'s enrollment costs at the Rebecca School were $84,900. Thus, payment for this cost is an available remedy whether paid or owed.[7]

Should the Court find that Section 1412 is ambiguous, it should find that the word reimburse refers to payment for educational costs, whether or not they are out-of-pocket, as this is consistent with the purpose of the IDEA to provide *all* disabled children a *free* appropriate public education. *See Id* §§ 1400(c)(6), 1400(d)(1)(A); *see Winkelman v. Parma City Sch. Dist.*, 550 U.S. 516, 523 (2007) ("[A] proper interpretation of [IDEA] requires a consideration of the entire statutory scheme"); *Frank G. v. Bd. of Educ.*, 459 F.3d 356, 368 (2d Cir. 2006) (quoting *United States v. Dauray*, 215 F.3d 257, 264 (2d Cir. 2000)) ("where a statute is ambiguous, it 'should be interpreted in a way that avoids absurd results.'"). Defendants' interpretation leads to the absurd result that the IDEA does not guarantee a FAPE to all disabled children; only those

---

[7] Defendants concede that these costs were sustained by D.A.'s Parents, who signed an enrollment contract obligating them to pay D.A.'s full tuition, made a deposit to the Rebecca School of $1,000, and subsequent monthly payments of $100. (*See* Answer, par. 4; Def.'s Rule 56.1 Statement, pars. 65-66)

5

whose parents can afford to pay out-of-pocket. Pursuant to case law and any reasonable interpretation of Sections 1412 and 1415, this Court is authorized to grant the relief sought.

### III. The IDEA's Equal Protection Guarantee Requires Granting the Relief Sought Here

"[W]here the state has undertaken to provide [a child an education], it is a right which must be made available to all on equal terms." *Brown v. Bd. of Educ.* 347 U.S. 483, 493, 74 S. Ct. 686, 691 (1954). Defendants admit that "every student with a disability has a substantive right to a [FAPE]." *Opp. Memo* at 19; *see* 20 U.S.C. § 1400(c)(6) (the IDEA ensures all children with disabilities equal protection regarding the right to a FAPE). However, they argue that because D.A. was educated at the Rebecca School, this Court should not be concerned about denying D.A. equal protection or about the result of this case for other children from families of limited financial means.[8] The fact is that D.A. was denied equal protection by the SRO's Decision because the education that D.A. received was not *free*, though all three *Burlington* prongs were met. A determination that the IDEA limits tuition payment to parents who can afford to pay out-of-pocket expenses abrogates not only D.A.'s equal right to a FAPE, but those of an entire class of impoverished children; a right to which Defendants agree D.A. and these children are entitled.

Defendants' also suggest that Congress may have intended for parents to pay first in order to guarantee a "market rate" tuition. This is without foundation in legislative history or case law, and there is no evidence that parents who pay out-of-pocket negotiate for "market rates." It would be extraordinary to place that burden on D.A.'s Parents. Further, Defendants do not even argue either that the Rebecca School's tuition was not market-rate, or unreasonable, for

---

[8] Defendants' claim that there is no guidance to determine financial means is belied by *Connors*, which states that parents must prove that they are unable to lay out the total costs for the private school to be entitled to tuition payment. *Connors*, 34 F.Supp.2d at 804. That proof is made at the impartial hearing level, as it was here. *See* Exhs. M-O, Tr. at 185-86; IHO Dec. at. 27.

6

the services it provided to meet D.A.'s unique needs or that it was not equivalent to the costs of educating an autistic child in a public school.[9] Similarly, Defendants assertion that the debt owed by D.A.'s Parents is a "sham" is contradicted by the only evidence in the record and Defendants' own Answer. (Exhs. G, H; *See* Answer ¶. 4.)

Finally, the Supreme Court has expressly rejected Defendants' suggestion that they will somehow suffer a financial burden by an award of tuition payment to D.A.'s Parents. *Forest Grove*, 129 S.Ct. at 2496; *Carter*. The cost of educating D.A. is Defendants' responsibility because New York accepted federal funds for that explicit purpose. (*See* Answer, ¶ 15.) For all the foregoing reasons, the Court should grant summary judgment in favor of D.A.'s Parents.

IV.    **Defendants Waived Their Right to Seek Reversal of the Findings of the SRO**

Defendants have deemed themselves an aggrieved party by asking this Court to partially reverse the SRO's decision. *Defendants' Memorandum in Support of Summary Judgment* at 1. Thus, the Rules required Defendants to plead the relief they seek as a counterclaim. *See* FED. R. CIV. PRO. R. 13. This Court should deny Defendants' request to re-designate their affirmative defenses as counterclaims, which is in its discretion. *See 389 Orange St. Partners v. Arnold*, 179 F.3d 656, 664 (9th Cir. 1999). "When a party does not raise... misdesignation... prior to summary judgment, justice does not require re-designation." *Peterson v. Heller*, 33 Fed. Appx. 871, 872 (9th Cir. 2002). In determining whether to treat an affirmative defense as a counterclaim, courts consider many factors including whether the matter was timely raised, *389 Orange St. Partners*, 179 F.3d at 664, "whether the affirmative defense as articulated in the pleadings would have provided the other party with sufficient notice and opportunity to address the issue", and whether the affirmative defense as asserted sufficiently states a claim for relief.

---

[9] Defendants' opportunity to proffer that the tuition of the Rebecca School was unreasonable has passed as they failed to submit evidence at the impartial hearing, before the SRO, and did not ask Court for discovery on the issue.

7

*Berkshires, L.L.C. v. Sykes*, 127 P.3d 1243, 1250 (Utah Court of App. 2005). Here, justice does not require re-designation because: (1) Defendants failed to move for re-designation prior to summary judgment; (2) the defenses fail to state a claim for relief or provide sufficient notice as to the factual bases upon which Defendants assert the claims. *Id*. Allowing Defendants to assert their defenses as counterclaims at the summary judgment stage prejudices D.A.'s Parents who, had they known, could have sought additional discovery on issues newly raised by Defendants concerning the costs of the Rebecca School, such as discovery on the fact that the costs for the Rebecca School is comparable to public special education programs.

V.     **The Record Supports the Findings of the IHO and SRO On the *Burlington* Prongs**

Should the Court consider Defendants' arguments on the *Burlington* prongs, the findings of the IHO and SRO that the three prongs were met are supported by the record and law and the Court should defer to these factual findings. *See* IHO Dec. at 22-27; SRO Dec. at 7; *See Frank G..*, 459 F.3d at 367; D.A.'s Parents' Opposition to Defendants' Motion for Summary Judgment ("D.A.'s Opp.") at 12-25. As D.A.'s Parents provided a record basis for these findings in D.A.'s Opp., they address here only Defendants' arguments raised in opposition.

A. **Defendants Failed to Provide a FAPE to D.A.**

Defendants contend that D.A.'s Parents refused an Interim Service Plan ("ISP"), yet Ms. Lope testified that there was never an offer made to the parent of an ISP. (Tr. at 377.) Ms. Lope admitted that the CSE did not offer or discuss any other placement options with D.A.'s Parents at the CSE meeting, although D.A. did not have a placement at the state of the school year. (Tr. at 375-376.) Thus, Ms. Lope admitted that D.A. was to begin the year "[i]n the Rebecca School", and Mrs. A testified that she kept D.A. home for the first part of September in the hope that Defendants would secure an appropriate placement for D.A. (Tr. at 325, 328, Ex. 9). Even

assuming *arguendo* that D.A.'s Parents had informed the CSE that they were placing D.A. at the Rebecca School, Defendants were still obligated to create an ISP or offer an appropriate IEP and placement recommendation. *See* 20 U.S.C. § 1414(d)(1)(A); 34 C.F.R. §§ 300.322(f), 300.323(a). The IHO and SRO found that Defendants' denied D.A. a FAPE because they failed to provide his Parents a written offer of placement. (IHO Dec. at 23-25; SRO at 7.).

### B. The Rebecca School Appropriately Met D.A.'s Unique Special Needs

Defendants claim that the Rebecca School is not appropriate is contradicted by their contention that D.A. actually received a FAPE at the Rebecca School of the 2007-2008 school year, *Opp. Memo* at 10-11, 22. They cannot assert both that D.A.'s Parents are not entitled to tuition payment because D.A. received an education at the Rebecca School and that it was not appropriate. Defendants also argue that D.A. did not make educational progress at the Rebecca School, referring to a partial quote from their psychological evaluation concerning the irrelevant 2006-2007 school year. Both the IHO and SRO found this fact unpersuasive, and held that the record showed that the Rebecca School was appropriate for the 2007-2008 year. (*See* IHO Dec. at 26; SRO Dec., p. 7; Tr. at 143-69, 205-12, 271-79; Exhs. B, C, E, F, J-L; D.A.'s Opp. at 18-21). Furthermore, between 2002-2006, D.A. had attended Defendants' recommended placement, Andrus/Orchard, where his I.Q. dropped 30 points and Mrs. A was told D.A. would never learn to read. (Tr. at 146, 304; 308.) Therefore, it is disingenuous for Defendants to argue that the Rebecca School was not appropriate because D.A. was not learning *faster* than he had at Defendants' school, particularly when the Rebecca school had to address the emotional damage caused by D.A.'s prior placement. (T. 146, 304, 308)

### C. The Record Demonstrates That The Equities Favor the Parents

Defendants' contention that D.A.'s Parents did not cooperate because they did not contact AMAC is belied by the record. D.A.'s Parents cooperated with Defendants at every stage, including contacting AMAC for a visit, despite the fact that Defendants deprived Defendants of a FAPE by failing to offer a placement. *See* SRO Dec. at 7; IHO Dec. at 23-25, Tr. at 14-18, 181-88. Indeed, Defendants' failure to provide D.A. any offer of placement prior to the 2007-2008 school year was an "utter abdication of [their] responsibility to provide…FAPE…[and] the law's imposition of this duty on the District is so well-settled" that the IHO and SRO properly found that D.A.'s Parents cooperated, and this Court should too find that the equities favor D.A.'s Parents. *Gabel v. Bd. of Educ.*, 368 F. Supp. 2d 313, 329 (S.D.N.Y. 2005); *see id.*

### CONCLUSION

For all of the foregoing reasons, the Court should grant D.A.'s Motion for Summary Judgment finding that: D.A.'s Parents are entitled to payment for D.A.'s tuition for the Rebecca School for the 2007-2008 school year totaling $84,900, having fulfilled the three *Burlington* prongs; reversing the decision of the SRO to the extent that it denied tuition payment, attorneys' fees and costs; and any further relief as the Court deems just and proper.

.Dated: February 22, 2010
         New York, New York

Respectfully submitted,

*[signature: Michele Kule-Korgood]*

| | |
|---|---|
| Michele Kule-Korgood (MKK 3278) | -and- |
| *Law Offices of Michele Kule-Korgood* | Caroline J. Heller (CH-8814) |
| 118-35 Queens Boulevard - 17th Floor | *Greenberg Traurig, LLP* |
| Forest Hills, New York  11375 | 200 Park Ave. |
| Telephone (718) 261-0181 | New York, New York 10166 |
| mkule@nyspecialedlaw.com | Telephone (212) 801-9200 |
| *Counsel for Plaintiffs* | |